Albert E. CARLSON, Plaintiff
and Respondent,

v.

Sheila Rae BOS and State Farm
Insurance, Defendants and
Appellants.

No. 19189.

Supreme Court of Utah.

June 9, 1987.

Michael Dyer, Salt Lake City, for defendants and appellants.

Ray Ivie, Provo, for defendant and appellant State Farm Ins.

Richard Johnson, Provo, for plaintiff and respondent.

ZIMMERMAN, Justice:

Plaintiff Albert E. Carlson sued defendant Sheila Rae Bos for injuries he received in an automobile accident. Believing that Bos did not live in Utah, he attempted, on two separate occasions, to serve her with the complaint under the substitute service of process provisions contained in Utah's nonresident or departed resident motorist

statute. Utah Code Ann. § 41–12–8 (1981).[1] Five years into the litigation, Bos appeared specially and moved to quash service and to dismiss the action for lack of jurisdiction. The trial court denied the motion, and this Court granted Bos permission to take an interlocutory appeal from that ruling. We reverse and remand for further proceedings.

In January of 1978, plaintiff Carlson was injured when he was involved in a car accident with defendant Bos and one Todd Christensen. Carlson filed suit against both Bos and Christensen in August of 1980, approximately two and one-half years after the accident.

Because Carlson believed that Bos was not residing in Utah when the action was commenced,[2] he sought to obtain personal jurisdiction over her by attempting to comply with section 41–12–8 of the Code. That statute provides that service of process may be made upon a nonresident motorist or a resident who has departed from the state "by serving a copy upon the secretary of state or by filing a copy in his office with payment of a $2.00 fee." Within ten days of the filing, the plaintiff also must send notice of the substituted service, together with an affidavit of compliance with the Act, to defendant at his or her last known address by registered mail. *Id.*

In an effort to comply with section 41–12–8, Carlson filed the summons and complaint with the secretary of state and sent notice of the action to Bos by certified mail at the Provo address listed on the two and one-half-year-old police accident report.[3] The affidavit of compliance that accompanied the mailed notice stated only that Carlson had served the secretary of state and had sent notice to Bos. It did not affirmatively aver that Bos was out of state, nor did it explain how Carlson had obtained or verified the address to which the notice was sent or state that the address was current. The record does not reveal whether the notice sent to Bos was returned to the sender.

Two years later, after Christensen settled, an amended complaint was filed. The amended complaint alleged that Bos was uninsured and added a claim against State Farm Insurance, Carlson's uninsured motorist carrier. Carlson again attempted to serve Bos pursuant to section 41–12–8. He served the complaint on the secretary of state, sent copies to the then four and one-half-year-old address listed on the accident report, and prepared an affidavit of compliance identical to the first one. Again, the record does not indicate whether the information sent to Bos in Provo was returned to the sender.

Bos did not become aware of the pending suit until shortly before the scheduled trial

---

**1.** At all times relevant to this case, the statute read as follows:

The use and operation by a nonresident or his agent, or [by] a resident who has departed from the state of Utah, of a motor vehicle upon and over the highways of this state shall be deemed an appointment by the nonresident, or a resident who has departed from the state of Utah, of the secretary of state as his true and lawful attorney upon whom may be served all legal process in any action or proceeding against him arising from the use or operation of a motor vehicle over the highways of this state resulting in damages or loss to person or property and said use or operation shall be a signification of his agreement that process shall, in any action against him which is so served, be of the same legal force and validity as if served upon him personally within this state. Service of process shall be made by serving a copy upon the secretary of state or by filing a copy in his office with payment of a $2 fee. Plaintiff shall, within ten days after service of process send notice thereof together with plaintiff's affidavit of

compliance with this act, to the defendant by registered mail at his last known address. Utah Code Ann. § 41–12–8 (1981). This statute, now slightly modified in ways not significant to this case, is found at Utah Code Ann. § 41–12a–505 (1986).

**2.** In his brief, Carlson states that he has three witnesses available who would testify that Bos was not in Utah when process was served. Bos, on the other hand, asserts in her brief that between the accident and the filing of the complaint, she and her husband lived in the Provo-Orem area. The district court did not take any evidence on these matters. The record, therefore, is silent on the question of where Bos resided at the time suit was filed, except for Carlson's attorney's representation to the district court that at the time the complaint was filed, he knew that Bos did not reside in Utah.

**3.** Bos asserts in her papers filed with this Court that she moved to Orem before leaving the state. The record is unclear as to whether Bos claims that she was living in Orem when the first complaint was filed.

date of March 21, 1983, when she was located by State Farm, Carlson's uninsured motorist carrier. She entered a special appearance seeking to quash service of process. The trial court ruled that Carlson had substantially complied with section 41–12–8 and that the substituted service effected had been sufficient to confer personal jurisdiction on the court.

On appeal, Bos claims that Carlson's attempt to gain jurisdiction over her through use of the procedure set forth in section 41–12–8 should be found ineffective because Carlson made no diligent attempt to locate her in Utah or to discover her current address. Bos contends that unless section 41–12–8 is construed as requiring a plaintiff to engage in a diligent search for an absent defendant's current address, absent defendants will be denied due process of law under the fourteenth amendment of the United States Constitution.[4]

Although not cited by either party, this Court's decision in *Graham v. Sawaya*, 632 P.2d 851 (Utah 1981), is directly pertinent to the issue presented here. There this Court, in reliance on the United States Supreme Court's decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), broadly stated and appeared to hold that published process accompanied by mailed notice to a last known address "does not measure up to the constitutional standard for an in personam judgment." *Graham v. Sawaya*, 632 P.2d at 854.[5]

Today, we uphold section 41–12–8's substitute service provisions. In so doing, we must and do disavow *Graham* to the extent that it bases the form of notice required by the federal constitution on whether the action is labeled in rem or in personam. This also leads us to reject *Graham*'s conclusion that substitute service accompanied by mailed notice sent to a last known address can never satisfy the requirements of due process, as those requirements are explained in *Mullane*.[6] For this reason, it is appropriate that we give a detailed description of the historical rationale for basing the form of notice required on the distinction between in personam and in rem actions. This leads directly to an explanation of why that rationale no longer has any vitality.

■ Federal procedural due process restrictions assure, to the extent possible, that the defendant will have the opportunity to appear and to be heard. *Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). Service of process implements the procedural due process requirement that a defendant be informed of pending legal action and be provided with an opportunity to defend against the action.

■ While personal service of process guarantees, that a defendant will be notified of pending legal action, this ideal is not always obtainable and early United States Supreme Court decisions recognized that it is not always necessary. For example, in the landmark case of *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877), the Supreme Court invalidated a personal judgment against a nonresident who had been served by publication. There the Court did not distinguish between a court's jurisdictional authority to adjudicate a controversy

---

**4.** This case was not briefed or argued on the parallel state constitutional provision in article I, section 7. Therefore, we do not analyze section 41–12–8 in light of the state's due process clause. *State v. Earl*, 716 P.2d 803, 805–06 (Utah 1986); *see also State v. Hygh*, 711 P.2d 264, 271–73 (Utah 1985) (Zimmerman, J., concurring).

**5.** Although the substituted service of process in *Graham* was invalidated on both federal and state due process grounds, the Court did not analyze separately the different due process provisions. Instead, it applied the *Mullane* interpretation of federal due process requirements to the state due process clause without explicitly

determining that those requirements necessarily were identical. In any event, because we dismiss *Graham*'s distinction between in rem and in personam proceedings for purposes of federal due process based on what we perceive to have been a misreading of *Mullane*, the foundational authority for the Court's ruling on state due process demands has been vitiated. The exact status of the state constitutional due process clause in this context, thus, has not been determined.

**6.** Although we reject *Graham*'s broad statement of its holding, it may be that the result in *Graham* would not be different under the analysis we employ today. *See* note 15, *infra*.

and the type of notice due the defendant. Instead, *Pennoyer* was based on the theory of "territorial jurisdiction," under which a court could exercise its authority only if the defendant or defendant's property was "present" within the forum state.

Under the territorial jurisdiction theory, a state lawfully could not serve process on a party outside the state's territorial boundaries. *Id.* at 720–23. The law generally required that a party receive personal service of process to be subject to a court's in personam [7] jurisdiction. *Id.* at 724. A court could exercise in personam jurisdiction, therefore, only if the party was within the state's territorial boundaries and, thus, was subject to personal service of process. *Id.* However, if the party was absent from the state, *Pennoyer* permitted the court to exercise in rem [8] jurisdiction over the party's in-state property upon published process. In a subsequent decision, the Court explained that personal service was not required in an in rem proceeding because a landowner is presumed to be informed concerning the status of his or her property. *Ballard v. Hunter,* 204 U.S. 241, 262, 27 S.Ct. 261, 269, 51 L.Ed. 461 (1907). Later cases interpreting *Pennoyer* have held that federal due process does not mandate personal service to absent defendants in in rem proceedings, but requires only that the substitute service be likely to reach the defendant. *See, e.g., Grannis v. Ordean,* 234 U.S. 385, 397, 34 S.Ct. 779, 784, 58 L.Ed. 1363 (1914); *McDonald v. Mabee,* 243 U.S. 90, 92, 37 S.Ct. 343, 344, 61 L.Ed. 608 (1917). However, this did not change the requirement of *Pennoyer* that when the proceeding was in personam, personal service within the state was necessary.

With *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the notion of territorial jurisdiction gave way to a concept of jurisdiction based on a party's minimum contacts with the forum state. While the minimum contacts standard enlarged a court's authority to assert in personam jurisdiction over individuals not present in the state, the form of the notice required to apprise such parties of the proceedings continued to vary, depending on whether the action was characterized as in personam or in rem.

Shortly after *International Shoe,* the Supreme Court abandoned the in rem/in personam distinction as a basis for determining the appropriateness of any given form of notice. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In *Mullane,* the Court observed that as a general matter, it had become very difficult to properly distinguish between an in personam and an in rem action due to the rise in importance of intangible forms of property and the development of new legal proceedings. *Id.* at 312, 70 S.Ct. at 656. The meaningfulness and utility of this classification scheme had become particularly questionable in the context of service of process. *Id.*

The *Mullane* case itself was a good example of the problems that the in rem/in personam distinction created when trying to decide what form of notice was required. There, the question was whether published notice to beneficiaries of a common trust fund concerning a hearing to settle the fund's accounts satisfied federal due process requirements. The Court noted that the proceeding, which involved closing the fund and settlement of the beneficiaries' potential interests in suing their trustee for negligence or breach of trust, had some features of both an in rem and in personam proceeding. *Id.* In light of the difficulty of applying the distinction to the facts of the case, as well as the distinction's increasingly doubtful conformance with any underlying principles relevant to the question of notice, the *Mullane* Court abandoned it. *Id.* at 312–13. Instead, a bal-

---

7. In personam jurisdiction refers to a court's authority to determine the rights and obligations between the parties. *See Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 727, 24 L.Ed. 565 (1877); *see also Hanson v. Denckla,* 357 U.S. 235, 246 n. 12, 78 S.Ct. 1228, 1235 n. 12, 2 L.Ed.2d 1283 (1958).

8. In rem jurisdiction refers to a court's authority to determine a party's interests in property. *See Pennoyer v. Neff,* 95 U.S. (5 Otto) at 734; *see also Hanson v. Denckla,* 357 U.S. at 246 n. 12, 78 S.Ct. at 1235 n. 12.

ancing approach was to be used in cases of all types. Under this approach, the state's interest in the subject matter of the proceeding would be weighed against the parties' interest in receiving actual notice to determine what form of service would satisfy due process. *See* Note, *Graham v. Sawaya: Utah's Notice Requirements for In Personam Actions,* 1982 Utah L.Rev. 657. The *Mullane* Court specifically recognized that actual notice was not always required. Rather, it stated the constitutional test against which the notice given in any specific case must be measured as follows: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. at 314, 70 S.Ct. at 657.

Our decision in *Graham v. Sawaya* relied upon this language from *Mullane* to support our conclusion that the federal constitution requires "reasonable assurance of actual notice for an *in personam* judgment, not just a showing that the means of notice employed was the best available in the circumstance." *Graham v. Sawaya,* 632 P.2d at 854.[9] However, *Mullane* established no such rigid rule. Its whole thrust is that the form of notice depends upon a balancing of interests, as an examination of the facts of *Mullane* shows.

In *Mullane,* the Court balanced the state's interest in closing the trust against the rights of the trust participants to re-ceive notice and to participate in the proceeding. In so doing, it factored into the analysis the practical obstacles facing the trustee in notifying the beneficiaries of the hearing. With respect to the interests of the state and the beneficiaries, the Court noted that both had strong interests in the proceeding. The state has a vital statutorily expressed interest in providing a means to close trusts that exist pursuant to its laws and are administered under the supervision of its courts. This interest gives the state's courts the right "to determine the interests of all claimants, resident or nonresident, providing its procedure accords full opportunity to appear and be heard." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. at 313, 70 S.Ct. at 656. At the same time, the trust beneficiaries also have a strong due process interest in being informed of the proceeding and in deciding for themselves whether "to appear or default, acquiesce or contest." *Id.* at 313–14, 70 S.Ct. at 657. The Court then proceeded to balance these competing interests and to factor into the analysis the difficulty of providing actual notice to all the parties. As a result of this balancing process, the Court found different types of notice appropriate for different classes of beneficiaries.

For present beneficiaries whose identity and place of residence was known to the trustee, the Court ruled that the trustee must inform them personally of the accounting, at least by ordinary mail. *Id.* at 318, 70 S.Ct. at 659. But as to three other classes of beneficiaries, the Court held that published notice alone was sufficient, *even*

---

**9.** Justice Stewart first mischaracterizes and then disagrees with our view of Graham v. Sawaya, 632 P.2d 851 (Utah 1981). Contrary to his suggestion, we have pointed out that *Graham* arguably could be construed consistently with our holding in the present action. *See infra* note 15. However, unlike Justice Stewart, we refuse to strain to reaffirm *Graham*'s holding by belaboring the facts, which are not clear and, in any event, did not appear to be a factor in the *Graham* Court's analysis, or by ignoring the Court's express language relying upon an in rem/in personam characterization of an action to determine the form of notice required. We do hold that the *characterization* of interests as in rem or in personam is irrelevant to the con-stitutional assessment of the reasonableness of the service of process used. However, we do not rule that the *interests* so characterized are not relevant to such an analysis. Indeed, it is those interests that we attempt to focus upon realistically in determining the constitutionality of the form of service of process used here. To the extent that *Graham* bases its due process analysis on the in rem/in personam characterization of an action, we disavow it.

Justice Stewart's concurrence is particularly puzzling because after misstating our conclusion with respect to *Graham,* he goes on ultimately to agree that it is not the in rem/in personam labels, but the substance of the action, that is relevant to due process.

though it recognized that with respect to these beneficiaries, published notice was "an indirect and even a probably futile means of notification." *Id.* at 317, 70 S.Ct. at 658. In reaching the conclusion that published notice would suffice, the Court considered the practical difficulties and expense that personal notice would entail and concluded that those costs would impose a severe burden on the common trust fund. On balance, this burden was not justified. *Id.* The classes with respect to which published notice would suffice included those whose interests in the trust fund were conjectural or future, those whose addresses could be discovered but were not kept in the trustee's ordinary course of business, and those whose interests or whereabouts could not with due diligence be ascertained.

The *Mullane* Court elaborated on why a form of notice that was admittedly not likely to give beneficiaries actual notice was permissible.

> The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, *where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.*

*Id.* at 315, 70 S.Ct. at 657 (citations omitted; emphasis added).

The present case raises a quite similar issue regarding the constitutionality of substitute service of process in what we would classify as an in personam proceeding under Utah's nonresident or departed resident motorist statute. As described above, section 41–12–8 provides for personal service upon a nonresident or departed resident's statutory agent, the secretary of state, accompanied by mailed notice to defendant's last known address. In a pre-*Mullane* decision, the United States Supreme Court considered the validity under the fourteenth amendment of a substitute service of process provision in a nonresident motorist statute. *Wuchter v. Pizzut-*

*ti,* 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928). In *Wuchter,* the Court held that the statute which provided for substitute service upon the secretary of state for nonresident or departed resident motorists, without more, violated federal due process standards. The *Wuchter* Court reasoned that the statute's omission of a provision making it reasonably probable that a defendant would receive actual notice invalidated the law. Under the *Wuchter* rule, "if the statutory provisions in themselves indicate that there is reasonable probability that if the statutes are complied with, the defendant will receive actual notice," the service of process will be sustained. *Id.* at 24, 48 S.Ct. at 262. As can be seen, the rule laid down in our decision in *Graham* is substantially in conformity with the result in *Wuchter.*

Utah's section 41–12–8, requiring service on the secretary of state and mailed notice to defendant's last known address, does not meet either *Wuchter*'s or *Graham*'s standard that it be reasonably probable that a defendant receive actual notice of the action. But, as discussed above, the "actual notice" standard articulated by *Wuchter* and *Graham* has no continuing vitality in light of *Mullane.* Therefore, despite the apparent relevance of those two decisions to the present case, we must analyze the matter anew.

Does section 41–12–8's substitute service provision satisfy the due process requirements of the fourteenth amendment? In answering that question, *Mullane* requires that we ignore the in personam classification of the proceeding and, instead, balance the interests of the state against those of the defendant in substitute service of process. Here, the state has a statutorily prescribed interest in assuring that its highways are safe and that they are traveled by residents and nonresidents alike. The legislature also has expressly described the state's interest in making certain that Utah residents who are involved in automobile accidents with departed residents or nonresidents are able to resolve their disputes through the Utah legal system. We think that the state's interest in this case, as in most other cases involving

absent residents or nonresidents, is amply demonstrated by the statutory[10] and common law[11] provisions authorizing its exercise of jurisdiction over persons with sufficient contacts with this forum. We conclude, as did the Court in *Mullane*, that the state's interest here is sufficient to establish the right of its courts to resolve disputes involving departed resident or nonresident motorists "provided its procedure accords full opportunity to appear and be heard." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 313, 70 S.Ct. at 656. On the other hand, defendant Bos, allegedly a departed resident motorist, also has an interest at stake here, the interest in being informed of the pending action filed against her and in having the opportunity to defend against that action.

Having set out the relative interests of the parties to the action, we now must perform the most difficult part of the *Mullane* analysis. We must add to the equation the practical difficulties that face a plaintiff who must serve notice on a difficult-to-find adversary. Only then can we determine whether the substitute service permitted by section 41–12–8 is "reasonably calculated, under all the circumstances, to apprise interested parties of the

pendency of the action and afford them an opportunity" to participate in the action. *Id.* at 314, 70 S.Ct. at 657.

As noted above, the *Mullane* opinion makes it plain that the words "under all the circumstances" embody the idea that a plaintiff must act diligently and take such steps in attempting to give the defendant actual notice of the proceeding as are reasonably practicable. In certain circumstances, this will require assuring actual notice; in others, it may be enough to seriously attempt to determine the defendant's present location and to mail notice to that address; in still others, publication alone may be enough.

A plaintiff such as Carlson seeking jurisdiction over a defendant such as Bos through the use of section 41–12–8 does face some practical difficulties in giving personal notice. However, these difficulties appear to be no greater than those that face any plaintiff bringing any action against any departed resident or nonresident. Carlson argues that it is sufficient if he simply complies with the statute. Section 41–12–8 only requires service on the attorney general and a mailing to the defendant's last known address. Therefore,

**10.** The state's interest in permitting plaintiffs to bring actions in Utah against departed residents and nonresidents by utilizing substitute service of process provisions is expressed implicitly not only in section 41–12–8, but also in the state long-arm statute, Utah Code Ann. § 78–27–24 (1986), which sets forth the minimum contacts necessary to submit a nonresident to the state's jurisdiction and Rule 4(f) of the Utah Rules of Civil Procedure. Rule 4(f)(1) provides for service by publication

[w]here the person upon whom service is sought resides outside of the state, or has departed from the state, or cannot after due diligence be found within the state, or conceals himself to avoid the service of process, or where such party is a corporation having no officer or other agent upon whom process can be served within this state, or where in an action in rem some or all of the defendants are unknown.

Rule 4(f)(2) provides for service by mailing a copy of the summons and complaint to defendant's address or last known address

[i]n circumstances described in (1) above justifying service of summons by publication, if the party desiring service of summons shall file a verified petition stating the facts from

which the court determines that service by mail is just as likely to give actual notice as service by publication.

The state's interest apparently is greater in the context of nonresident or departed resident defendants who are motorists than in the context of other defendants who qualify for substitute service under Rule 4(f). Under section 41–12–8, service on an absent defendant is complete three days after process is mailed. In contrast, under Rule 4(f)(1), service by publication is not complete until the date of the last publication, or four weeks after the initial step towards substitute service was taken. Under Rule 4(f)(2), service is not complete until ten days after notice is mailed to defendant's address or last known address. The shortened time required to complete service of process under section 41–12–8 attests to the state's concern that plaintiffs injured in automobile accidents can easily and readily pursue their claims against nonresidents or departed resident motorists.

**11.** For a discussion of Utah's personal jurisdictional requirements, *see, e.g., Rhoades v. Wright*, 622 P.2d 343 (Utah 1980), *cert. denied*, 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 212 (1981).

there is no requirement that one using section 41–12–8 make any effort to determine whether the address to which the notice is mailed is current.

It is true that in *Mullane,* the Court did permit some of the beneficiaries to be served by simply mailing notice to the addresses on the books of the trustee, and others to be served by nothing more than publication. However, before reaching this conclusion, the Court considered the facts and found that the large number of potential beneficiaries and the prohibitive expense that would be imposed on the fund if the trustee were required to search beyond ordinary business records to find addresses for those beneficiaries did not justify requiring that the trustee make even that effort to provide them with actual notice. In contrast, the plaintiff here needed to locate only one allegedly departed resident whose identity he well knew. It is true that any serious effort to locate Bos certainly would require some expenditure of time and possibly of money. Still, those costs are not sufficiently great that requiring their expenditure likely would devalue Carlson's cause of action against Bos or undermine the state's interest in having Carlson and others who use Utah's roads be able to adjudicate claims in Utah courts against those absent from the state. Thus, we conclude that no persuasive case has been made for the claim that the plaintiff has taken all steps to locate the defendant and get notice to her that are reasonably practicable under the circumstances. The burdens that a requirement of additional diligence would impose on Carlson are simply not analogous to those that would have fallen on the trustee in *Mullane.*

■ For the foregoing reasons, we conclude that a plaintiff proceeding under section 41–12–8 cannot satisfy federal due process requirements by using substitute service of process mailed to a last known address without first having shown that diligent efforts have been made to locate the defendant. Only by making a satisfactory showing of diligence can such a plaintiff satisfy the requirements of *Mullane* by demonstrating that the form of notice chosen is as reasonably calculated to reach the defendant as any other practicable alternative. It is true, as Carlson has pointed out, that section 41–12–8 does not expressly require due diligence as a prerequisite to a plaintiff's use of its substitute service provisions. We interpret the statute, however, to require implicitly a showing of due diligence similar to that mandated by Rule 4(f).[12] By implying certain limited procedural requirements to save this statute from constitutional infirmity, we are acting in accordance with this Court's policy of "constru[ing] statutes when possible to effectuate the legislative intent and to avoid potential constitutional conflicts." *State v. Casarez,* 656 P.2d 1005, 1008 (Utah 1982); *see In re Clatterbuck,* 700 P.2d 1076, 1079–80 (Utah 1985).

To be more specific, two diligence requirements must be imposed upon anyone who relies on section 41–12–8. The first requirement is implied as a matter of statutory construction and is based on the fact that substitute service of process is in derogation of the usual and preferred method of personal service as outlined in Rule 4 of the Utah Rules of Civil Procedure. Therefore, we interpret the statute to require that before a plaintiff may effect service under section 41–12–8, there must be a showing that the facts justify use of the statute, rather than Rule 4. A plaintiff must establish, by use of the affidavit of compliance contemplated by the statute,

---

**12.** Rule 4(f) provides that the plaintiff desiring to utilize a substitute form of service must show that the prerequisites to such service have been met. The plaintiff acting pursuant to Rule 4(f) must file a verified motion which

    shall state the facts authorizing such service and shall show the efforts that have been made to obtain personal service within this state, and shall give the address, or last known address, of each person to be served or shall state that the same is unknown. The court shall hear the motion ex parte and, if satisfied that due diligence has been used to obtain personal service within this state, or that efforts to obtain the same would have been of no avail, ...

shall permit the plaintiff to serve process by publication or by mail. Utah R.Civ.P. 4(f)(1).

that after diligent effort,[13] he or she has determined to a reasonable certainty that defendant motorist is either a nonresident or a resident who has departed from the state, and therefore, that service under section 41–12–8 is appropriate.[14]

The second diligence requirement is one we imply to avoid constitutional infirmities in section 41–12–8. To satisfy it, plaintiff must establish that a diligent attempt has been made to obtain defendant's current address. If a current address is discovered, that address is the one to which the mailed notice should be sent. Mailed notice to defendant's current address clearly satisfies *Mullane*'s requirement that the notice be reasonably calculated to apprise defendant of the pending action. If, despite diligent effort, plaintiff is unable to determine defendant's current address, then due process will be satisfied if notice is mailed to an address that has been determined, after diligent efforts, to be defendant's last known address, even though it is clear that defendant does not presently reside at that address.[15]

We recognize that notice thus mailed to a last known address may never reach a defendant. However, under appropriate circumstances, *Mullane* permitted not only notice mailed to a last known address but notice by publication alone. In contrast to published process, which is brought to a party's attention by "chance alone," *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 315, 70 S.Ct. at 658, notice mailed to a last known address has at least a chance of reaching a defendant inasmuch as either the post office or the current resident might forward the mail to defendant. We think that in the circumstances presented by the normal action to which section 41–12–8 applies, the mailing of notice to a last known address discovered through diligent efforts is reasonably calculated to notify defendant of the action; certainly this form of service "is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id.*[16]

---

**13.** The "diligent effort" required to establish both the facts necessary for reliance upon the nonresident or departed resident motorist statute and the defendant's last known address will, of course, vary with the circumstances. In *Parker v. Ross*, 117 Utah 417, 217 P.2d 373 (1950), this Court considered whether a plaintiff had made a "diligent effort" to attempt to locate a defendant before serving process by publication pursuant to Utah's quiet title statute. Although *Parker* was based on a statutory, rather than federal constitutional analysis, Justice Wolfe's concurring opinion set forth some general due diligence guidelines that are instructive to plaintiffs attempting to comply with section 41–12–8. Justice Wolfe stated:

The diligence to be pursued and shown ... is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address ... of the person on whom service is sought.... Due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so.

*Id.* at 379.

**14.** If plaintiff cannot determine that the defendant is a nonresident or a departed resident motorist, then process could be served as provided in Rule 4, including Rule 4(f)(1), where applicable.

**15.** Arguably, the narrowest reading of the holding in *Graham*, that the service effected there did not satisfy federal constitutional standards, may be correct on the basis of certain unarticulated facts. In *Graham*, the plaintiff apparently conducted a diligent search to establish that the defendant was no longer in Utah and, therefore, that reliance upon the substitute service provisions of Rule 4(f) was justified. *Graham v. Sawaya*, 632 P.2d at 852 n. 1. The opinion is silent, however, as to whether she exercised due diligence in attempting to locate defendant's current address or, failing that, his last known address. Assuming that she did not diligently attempt to locate defendant once she determined that he no longer resided within Utah, *Graham*'s holding that the substituted service attempted there did not meet the due process requirements as set forth in *Mullane* could be harmonized with our decision in this case. We cannot reconcile these cases definitively, however, because the underlying facts in *Graham* are not clear.

**16.** Numerous other jurisdictions have held provisions for mailing notice to a defendant's last known address constitutional when diligence also was required. *Medeiros v. Kaye,* 31 Conn. Supp. 370, 331 A.2d 351, 352 (1974); *Halliman v. Stiles,* 250 Ark. 249, 255, 464 S.W.2d 573, 577 (1971); *Ter Har v. Backus,* 259 Or. 478, 483, 487 P.2d 660, 662 (1971); *Fernandez v. Chamberlain,* 201 So.2d 781, 785, *cert. denied,* 207 So.2d 454 (Fla.App.1967); *Mitchell v. Second Jud. Dist.*

It is true that the diligence requirements we have implied into section 41–12–8 have diminished somewhat the advantages it gives to a plaintiff over Rule 4(f). Although the time required to serve process under section 41–12–8 remains shorter than that necessary under Rule 4(f),[17] plaintiff is now compelled to exercise the same due diligence to establish the statutory right to use an alternative form of process under the statute as is required by Rule 4(f). Nevertheless, we think that *Mullane* demands this result despite the state's heightened interest in assisting those involved in car accidents to resolve their disputes.

■ The record in the present case does not provide sufficient facts to determine whether these diligence requirements have been met. For instance, Bos claims to have lived in Orem for some period of time after the accident, while Carlson claims to have searched unsuccessfully for her whereabouts. Nothing in the record permits us to determine whether Carlson acted diligently before effecting service under the statute or in ascertaining Bos's last known address. Accordingly, we remand this case for further factual findings and determination of the issues in light of the standards articulated today.[18]

HALL, C.J., and DURHAM, J., concur.

STEWART, Associate Chief Justice (concurring in the result):

Although I agree with the result reached by the majority, I do not agree with the majority's view of *Graham v. Sawaya*, 632 P.2d 851 (Utah 1981). The majority states that *Graham* held:

> Court, 82 Nev. 377, 381–82, 418 P.2d 994, 997 (1966); *Towe v. Giovinetti*, 164 F.Supp. 159, 160 (W.D.Mo.1958); *Volmer v. Hoel*, 87 Ohio App. 199, 205, 93 N.E.2d 416, 420 (1950). Some states impose a diligence requirement in the language of their substitute service statutes for motorists. D.C.Code § 40–407(a) (1981) (requires the posting of a bond by plaintiffs before using substituted service); Kan.Gen.Stat. § 8–402 (1982) (allows substitute service only after affidavit and court order); N.M.Stat.Ann. § 66–5–104 (1978) (affidavit and court order); Wash. Rev.Code Ann. § 46.64.040 (1986) (requiring list of addresses where personal service was attempted); W.Va.Code Ann. §§ 56–3–31, –33

[T]he form of notice required by the federal constitution [depends] on whether the action is labeled in rem or in personam. This also leads us to reject *Graham*'s conclusion that substitute service accompanied by mailed notice sent to a last known address can never satisfy the requirements of due process, as those requirements are explained in *Mullane*. *Graham* did not base the form of notice required on whether the action is labeled in rem or in personam, as I read it. In *Graham*, the Court did note:

> Notice by publication has been found acceptable in some circumstances for a judgment *in rem* or *quasi in rem*, where, so far as defendant is concerned, the judgment affects only an interest in property or status within the territorial jurisdiction of the court. Even in that circumstance, however, publication is not a constitutionally acceptable means of notice of the pendency of litigation where "it is not reasonably calculated to reach those who could easily be informed by other means at hand."

632 P.2d at 853–54 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319, 70 S.Ct. 652, 660, 94 L.Ed. 865 (1950)).

But the Court did not hold that the nature of the action controls or that service on a nonresident defendant's last place of residence is invalid when due diligence is exercised in trying to find the defendant. The Court actually applied the same rule which the majority opinion applies to the facts of the instant case, i.e., that the "governing constitutional principle on which we rest our decision is the due process require-

(1985) (bond); Wis.Stat.Ann. § 345.09(2) (1985) (party or party's attorney must certify last known out-of-state address).

17. For discussion of time required to serve process under section 41–12–8 versus Rule 4(f), *see* note 10, *supra*, at p. 1275.

18. We do not reach the issue of whether this action is barred by statute of limitations if service is found to be insufficient. This determination hinges largely on the factual findings for which we remand this case.

ment that the mode of service be 'reasonably calculated to give [defendant] actual notice of the proceedings and an opportunity to be heard,' *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)....'' *Graham*, 632 P.2d at 854.

Although the plaintiff had undertaken a diligent search for the defendant *within* the State of Utah in *Graham*, the defect in the service of process was that the defendant resided *outside* the State of Utah and there had been no effort to locate the defendant's current residence. *Id.* at 852 n. 1. Under those circumstances, service by publication with service to the defendant's last known address was constitutionally inadequate because there was no showing as to when the defendant had resided at the last known address, what likelihood there was that mail sent to that address would be forwarded, or that the defendant could not with reasonable effort have been found.

*Greene v. Lindsey*, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982), rejects the majority's position that the *concepts* embodied in the terms "in rem" and "quasi in rem" are no longer relevant at all in determining the adequacy of notice. In *Greene*, as in *Mullane* and *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Court made clear that the nature of the cause of action could have a bearing on the reasonableness of the notice given a defendant. The Court stated:

> That is not to say that the nature of the action has no bearing on a constitutional assessment of the reasonableness of the procedures employed. The character of the action reflects the extent to which the court purports to extend its power, and thus may roughly describe the scope of potential adverse consequences to the person claiming a right to more effective notice.

*Greene*, 456 U.S. at 450, 102 S.Ct. at 1878.

The Court held in *Greene* that notice tacked to the door of a defendant in a forcible entry and detainer case did not constitute a valid service of process where the evidence indicated a likelihood that notice would be taken off the door by neighbors or other persons. Thus there was a real possibility that the defendant would not receive actual notice. In holding the service constitutionally inadequate, the Court summarized its rationale by stating that "the reasonableness of the notice provided must be tested with reference to the existence of 'feasible and customary' alternatives and supplements to the form of notice chosen." *Id.* at 454, 102 S.Ct. at 1880.

What is critical is that a plaintiff use reasonable diligence in trying to locate a defendant and provide a "reasonable assurance" that the defendant will receive notice by service that is "reasonably calculated" to give notice. Diligence, in this context, means that "all reasonable means ... [are] exhausted" in trying to determine whether a defendant is a nonresident or a departed resident and what the defendant's last known address is. *Kintigh v. Elliott*, 280 Or. 265, 270, 570 P.2d 659, 662 (1977). *See also Ter Har v. Backus*, 259 Or. 478, 481, 487 P.2d 660, 662 (1971). "Last known address" means the last known address so far as it is reasonably possible to ascertain it. *Medeiros v. Kaye*, 31 Conn.Sup. 370, 331 A.2d 351, 352 (1974) (cited by the majority opinion). Under rare circumstances, this may be the address last known to the plaintiff, but normally it would be "the last address of the defendant so far as it is known, that is, by those who under the ordinary circumstances of life would know it." *D'Occhio v. Connecticut Real Estate Commission*, 189 Conn. 162, 171, 455 A.2d 833, 838 (1983) (quoting *Hartley v. Vitiello*, 113 Conn. 74, 80, 154 A. 255, 258 (1931)). This may require a plaintiff to make an investigation. For example, a plaintiff might make inquiry at the post office of the address last known to the plaintiff, at the defendant's last known employer, at public utility companies in the area of the address last known to the plaintiff, of the defendant's neighbors in the area of the address last known to the plaintiff, and of the defendant's friends and relatives. *Kintigh*, 280 Or. at 270, 570 P.2d at 662; *Ter Har*, 259 Or. at 482, 487 P.2d at 662.

HOWE, Justice (concurring in the result):

I concur in the result which remands this case to the trial court to determine whether

the plaintiff exercised diligence in ascertaining the last known address of Bos.

It is well established that a state may, as a condition precedent to the use of its highways by a nonresident motorist or by a resident motorist who later departs from the state, enact a statute providing that such motorist consents to the appointment of a state official as his agent for the acceptance of service of process in actions arising out of the operation of his motor vehicle within that state. The right of the state to do so rests on the exercise of its police powers to prescribe regulations necessary for public safety and order in the operation of motor vehicles. 61 C.J.S. § 502(1)(a). The validity of such statutes has been upheld provided they contain a provision making it reasonably probable that notice of suit or notice of service on the state official designated as agent will be communicated to the defendant who is sued. *Wuchter v. Pizzutti,* 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230 (1928); *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927). It has been pointed out that "such consent may be a pure legal fiction where the nonresident user of the State's highways is not aware of the statutory mandate, but the use, related as it is to the public safety and security, is of a nature such as to justify the fiction." *Whalen v. Young,* 15 N.J. 321, 104 A.2d 678 (1954). Such statutes greatly benefit the residents of the state in that they may bring legal action and recover an in personam judgment against a nonresident motorist or a departed resident motorist in the state where the accident occurred. They are not forced to pursue their action in a foreign state.

Because nonresident motor vehicle statutes such as our Utah Code Ann. § 41–12–8 rest on a distinct basis as explained above, I do not find it relevant or helpful to determine in this action whether our decision in *Graham v. Sawaya,* 632 P.2d 851 (Utah 1981), was correct and whether we misinterpreted *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Neither of those cases involved nonresident motor vehicle statutes which for fifty years have been held constitutional. Both cases arose from an entirely different set of facts. The reservations expressed in *Graham v. Sawaya* about obtaining an in personam judgment by publication and mailing of process under the facts of that case were not meant to apply to actions arising under section 41–12–8. That case involved a suit against a nonresident for his fraud in procuring investment funds and then converting them to his own use.

In the instant action, we need only concern ourselves with whether the plaintiff made diligent inquiry in attempting to ascertain Bos's last known address. *Wuchter v. Pizzutti, supra.* As explained in the majority opinion and in the separate opinion of Justice Stewart, this requirement does not mean the last address known to the plaintiff, but the last address known to persons who would be expected to know it, and the last known address is the one that is most likely to give notice to the party to be served. 61 C.J.S. § 502(5)(b). *See Bowen v. Olson,* 122 Utah 66, 246 P.2d 602 (1952).

It is interesting to note that several courts have held that a plaintiff bringing an action as late as two years after the accident may rely on an address furnished by the nonresident motorist to the proper public authority (usually the police) at the time of the accident, and there is a continuing duty on the nonresident or departed motorist to keep that address current for a reasonable time. *Sorenson v. Stowers,* 251 Wis. 398, 29 N.W.2d 512 (1947); *Kraft v. Bahr,* 256 Iowa 822, 128 N.W.2d 261 (1964); *Swift v. Leasure,* 285 A.2d 428 (Del.Super. 1971). Nevada's nonresident motor vehicle statute (Nev.Rev.Stat. § 14.070) provides that process may be mailed to the defendant at the address given in his accident report, if any, and, if none is given, then to the best address of the defendant which is available to the plaintiff. The Supreme Court of that state advised that the plaintiff in his affidavit should state the source of the address of the defendant which he uses. By so doing, the plaintiff establishes his good faith and diminishes the possibility of fraud. *Mitchell v. Second Judicial Dis-*

*trict Court,* 82 Nev. 377, 418 P.2d 994 (1966).