In the Matter of the ESTATE OF Glenn Claughton ANDERSON, Jr., Deceased.

Appeal of CHARTER THRIFT & LOAN, Plaintiff and Appellant.

No. 900479.

Supreme Court of Utah.

Dec. 13, 1991.

Mark S. Swan, Mark E. Medcalf, Salt Lake City, for Charter Thrift and Loan.

S. Dee Long, Salt Lake City, for the Estate and the personal representative.

**PER CURIAM:**

Charter Thrift and Loan appeals from an order in probate denying its petition for allowance of claims presented to Shelly J. Jones, personal representative of the Estate of Glenn Claughton Anderson, Jr., deceased.

Jones was appointed personal representative of her father's estate on August 12, 1987. She had knowledge of her father's indebtedness to Charter, one unsecured claim in the amount of $1,215.50 and another claim, a promissory note in the amount of $29,444.47, secured by five thousand shares of capital stock of Glennco Investments, Inc. Jones informed Charter of her father's death and of her appointment as personal representative of the estate.

Beginning September 4, 1987, Jones caused notice to creditors to be published for three consecutive weeks, as required by Utah's nonclaim statute, Utah Code Ann. § 75-3-801, but did not give actual notice of the publication to Charter.

Charter was not aware of the publication of the notice and did not file its creditor's claim until March 1, 1990, well outside the three-month claim bar set by the nonclaim statute. Jones denied the claim, and Charter petitioned the probate court for allowance of its claims.

In its petition, Charter claimed that the only notice given was published as required by the nonclaim statute and that that notice was insufficient under due process standards, as articulated in *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). Under that ruling, Charter argued, reasonably ascertainable creditors were entitled to actual notice that claims were due.

Charter also informed the trial court that the Utah legislature had amended the nonclaim statute to reflect the *Tulsa* decision and that Charter's claims were not barred, because it was a known creditor of the estate. Charter bolstered its argument with the proffer of evidence of correspondence between the parties on their attempt to negotiate a settlement of Charter's claims starting September 24, 1987, and ending in March 1990.

Last, Charter argued that the allowance of its claim would not unduly delay the probate proceedings because the personal representative had filed no inventory of assets and the court had not approved distribution or finally closed the probate.

The trial court concluded that Jones's method of notification met all the requirements of the Utah Uniform Probate Code and that Charter's due process rights were not violated because Charter received actual notice of Anderson's death, the filing of probate proceedings, and the appointment of Jones as personal representative. The trial court did not consider Charter's due process argument under *Tulsa*. It ruled that Charter's claims against the estate, the personal representative, and the heirs

and devisees of decedent were forever barred.

Charter appeals, challenging the trial court's ruling in light of the *Tulsa* decision. We reverse and remand for presentment and allowance of Charter's claims.

■ The trial court's interpretation of the nonclaim statute presents us with a question of law which we review for correctness without particular deference to the trial court. *Reeves v. Gentile,* 813 P.2d 111 (Utah 1991); *Bonham v. Morgan,* 788 P.2d 497 (Utah 1989).

■ At the time this case was litigated, Utah's nonclaim statute read as follows:

> Unless notice has already been given under this section, a personal representative upon his appointment shall publish a notice once a week for three successive weeks in a newspaper of general circulation in the county announcing his appointment and address and notifying creditors of the estate to present their claims within three months after the date of the first publication of the notice or be forever barred.

Utah Code Ann. § 75-3-801 (1978). Where no notice to creditors has been published, Utah law bars the claim three years after the decedent's death. Utah Code Ann. § 75-3-803(1)(b).

In 1989, the legislature amended the nonclaim statute and added a second sentence. The statute, as amended, now reads:

> Unless notice has already been given under this section, a personal representative upon his appointment shall publish a notice once a week for three successive weeks in a newspaper of general circulation in the county announcing the personal representative's appointment and address *and* notifying creditors of the estate to present their claims within three months after the date of the first publication of the notice or be forever barred. *The personal representative shall, after making reasonable efforts to ascertain creditors of the estate, also mail such notice on or before 14 days after the date of first publication to all then known creditors of the estate.*

Utah Code Ann. § 75-3-801 (1989) (emphasis added), *amended by* 1989 Utah Laws ch. 117, § 1.

In challenging the nonclaim statute on due process grounds, Charter contends that a known creditor is entitled to actual notice before its claim is forever barred and that the trial court committed manifest error when it denied Charter's claims on the ground that Charter received notice of the debtor's death. Charter repeats here what it argued before the probate court, that "actual notice" of Anderson's death and Jones's appointment was not enough to satisfy federal due process requirements, where Charter did not have actual notice that its claim would be cut off three months after first publication of notice to creditors. It was the latter notice that the United States Supreme Court thought critical in *Tulsa,* the case which Charter maintains dictates the outcome of its appeal.

Jones replies that she complied with the then applicable statute and that her notification to Charter of her father's death was sufficient to comply with the need for actual notice.

In *Tulsa,* the United States Supreme Court confronted a similar due process argument within the statutory framework of Oklahoma's probate law. The Court acknowledged that in most jurisdictions, including Utah, it is the publication of notice to creditors that triggers the nonclaim statute, 485 U.S. at 480, 108 S.Ct. at 1342, and that it is almost uniform practice, including in Utah, to establish claims deadlines by publication notice only, *id.* at 489, 108 S.Ct. at 1346-47.

Tulsa Professional Collection Services (Tulsa), a subsidiary of St. John Medical Center, was a creditor of the Pope estate for expenses connected with Pope's long stay at that hospital. Tulsa, too, claimed that notice by publication adversely affected its protected property interests under the fourteenth amendment and that it was entitled to actual notice instead of notice by publication only. The Supreme Court agreed and advanced this rationale:

> In assessing the propriety of actual notice in this context consideration

should be given to the practicalities of the situation and the effect that requiring actual notice may have on important state interests.... Creditors, who have a strong interest in maintaining the integrity of their relationship with their debtors, are particularly unlikely to benefit from publication notice. As a class, creditors may not be aware of a debtor's death or of the institution of probate proceedings. Moreover, the executor or executrix will often be, as is the case here, a party with a beneficial interest in the estate. This could diminish an executor's or executrix's inclination to call attention to the potential expiration of a creditor's claim. There is thus a substantial practical need for actual notice in this setting.

485 U.S. at 489, 108 S.Ct. at 1346–47 (citations omitted).

The Supreme Court weighed the important state interests in regulating the timeliness of creditors' claims against the rights of those creditors to have their intangible interests in property protected by the fourteenth amendment. The Supreme Court held that the due process clause was implicated when there was significant state action in probate proceedings by the Oklahoma probate court, without whose involvement the time bar would not be activated. When legal proceedings themselves triggered the time bar, the time bar lacked self-execution and due process problems could not be removed. It concluded, "Thus, if appellant's identity as a creditor was known or 'reasonably ascertainable,' then the Due Process Clause requires that appellant be given '[n]otice by mail or other means as certain to ensure actual notice.'" 485 U.S. at 491, 108 S.Ct. at 1348 (quoting *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 800, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983)).[1]

 That ruling controls this case. We therefore hold that notice to Charter of Anderson's death and Jones's appointment

as personal representative, together with notice to creditors by publication only under section 75–3–801, was insufficient to give Charter actual notice that its claim would be barred if not presented within three months of first publication. Absent actual notice, Charter's claim was timely under section 75–3–803(1)(b), because it was presented to the estate within three years after Anderson's death.

The trial court's order is reversed, with instructions to the trial court to allow the claim.

---

1. Compare *Carlson v. Bos,* 740 P.2d 1269, 1276 (Utah 1987), where this court concluded that federal due process requirements were not satisfied unless diligent efforts had first been made to give actual notice to a nonresident motorist

under Utah Code Ann. § 41–12–8 before service on the secretary of state was considered sufficient. Those limited procedures were necessary to save that statute from constitutional infirmity.