2006 UT App 385

**Bounthay SAYSAVANH, Petitioner and Appellee,**

**v.**

**Meg McGary SAYSAVANH, Respondent and Appellant.**

**No. 20050803–CA.**

Court of Appeals of Utah.

Sept. 21, 2006.

Clayne I. Corey, Clayne I. Corey, PLLC, Sandy, for Appellant.

Randall L. Skeen and Todd R. Mecham, Cook Skeen & Robinson, LLC, Salt Lake City, for Appellee.

Before BENCH, P.J., ORME and THORNE, Jr., JJ.

## OPINION

BENCH, Presiding Judge:

¶ 1 Meg McGary Saysavanh (Wife) appeals the trial court's denial of her motion to set aside a default decree of divorce. Wife argues that the trial court lacked jurisdiction because she was not properly served with process according to rule 4 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 4. We reverse and remand.

## BACKGROUND

¶ 2 Bounthay Saysavanh (Husband) and Wife separated in February 2001. Wife moved to Mexico while Husband and their minor child remained in Utah. During the summer of 2001, the child visited Wife, and Wife refused to return the child to Husband. To date, Wife and the child remain in Mexico.

¶ 3 In October 2001, Husband filed a petition for divorce. In addition to the petition, Husband filed a motion for an ex parte temporary restraining order and order to show cause. The trial court denied the ex parte motion because the child was not born during the parties' marriage and Husband had not established paternity.

¶ 4 In October 2003, Husband filed an amended petition for divorce and a motion for an order to show cause. About a week later, Husband filed a motion for alternative service pursuant to rule 4(d)(3)(B)(iii) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 4(d)(3)(B)(iii). The trial court granted the motion for alternative service, and in November 2003, the court clerk mailed certain documents to Wife in Mexico, requesting a return receipt. These documents included the Amended Verified Petition for Divorce,

Summons, Motion for Order to Show Cause, and Order to Show Cause. The receipt was later returned to the court clerk unsigned and without any other indication that delivery to Wife had been effected.

¶ 5 Wife asserts that she did not receive any of the documents mailed by the court clerk and was unaware of the order to show cause hearing. Despite Wife's absence at the hearing, the trial court granted Husband's motion for order to show cause. Later, the trial court also entered a default decree of divorce.

¶ 6 Wife contends that she first became aware of the default decree in 2005, after receiving information that the Federal Bureau of Investigation was investigating her for removing the child from the United States. Wife immediately obtained counsel in Utah and filed a motion to set aside the default decree of divorce pursuant to rule 60(b). *See* Utah R. Civ. P. 60(b). The trial court denied Wife's motion to set aside the default decree and held that Husband "made every effort possible to apprise [Wife] of the divorce proceedings, including strict compliance with Rule 4(d)(3)(B)(iii) of the Utah Rules of Civil Procedure." Wife now appeals.

## ISSUE AND STANDARD OF REVIEW[1]

¶ 7 Wife argues that the trial court erred in denying her rule 60(b) motion to set aside the default decree of divorce because the court lacked jurisdiction. *See* Utah R. Civ. P. 60(b). A denial of a motion to set aside a judgement is ordinarily reviewed for an abuse of discretion. *See Franklin Covey Client Sales, Inc. v. Melvin,* 2000 UT App 110, ¶ 8, 2 P.3d 451. "However, when a motion to [set aside] a judgment is based on a claim of lack of jurisdiction, the district court has no discretion." *Id.* "[T]he propriety of the jurisdictional determination . . . becomes a question of law upon which we do not defer to the district court." *Id.*

---

1. Because our decision on the issue of jurisdiction is dispositive, we do not reach Wife's other issues on appeal.

## ANALYSIS

¶ 8 "Personal jurisdiction . . . is the court's ability to exercise its power over a person for the purposes of adjudicating his or her rights and liabilities. A lack of [personal jurisdiction] is fatal to a court's authority to decide a case with respect to a particular litigant." *State Dep't of Soc. Servs. v. Vijil,* 784 P.2d 1130, 1132 (Utah 1989) (citations omitted).

¶ 9 "For a court to acquire jurisdiction, there must be a proper issuance and service of summons." *Jackson Constr. Co. v. Marrs,* 2004 UT 89, ¶ 10, 100 P.3d 1211. "Service of process implements the procedural due process requirement that a defendant be informed of pending legal action and be provided with an opportunity to defend against the action." *Carlson v. Bos,* 740 P.2d 1269, 1271 (Utah 1987).

¶ 10 Rule 4 of the Utah Rules of Civil Procedure governs service of process, and subsection 4(d)(3) specifically governs service of process in a foreign country. *See* Utah R. Civ. P. 4(d)(3). In order to determine which part of subsection 4(d)(3) is applicable, we first assess whether there is an internationally agreed means of service in Mexico, "such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Utah R. Civ. P. 4(d)(3)(A). If there exists an internationally agreed means of service between the countries, rule 4(d)(3)(A) is applicable. *See id.* If there is no internationally agreed means of service, rule 4(d)(3)(B) is applicable. *See* Utah R. Civ. P 4(d)(3)(B). Finally, rule 4 allows the trial court to direct service "by other means not prohibited by international agreement." Utah R. Civ. P. 4(d)(3)(C).

### I. Rule 4(d)(3)(A)

¶ 11 In their briefs on appeal, both parties presume that there is no internationally agreed means for service of process in Mexico and argue whether service was satisfied under subsection 4(d)(3)(B) of the rule. That was also the subsection relied upon by

the trial court. We conclude that because there is an internationally agreed means of service in Mexico, subsection 4(d)(3)(A) applies.

¶ 12 The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the Hague Service Convention) establishes international procedures for service of process between individuals or entities of member countries.[2] *See* Hague Service Convention, *concluded* Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. The United States adopted the convention in 1967, effective on February 10, 1969. *See* Hague Conference on Private International Law, Status Table, http://hcch.e-vision.nl/index_en.php?act= conventions.text&cid=17 (last visited Sep. 18, 2006). Mexico adopted the convention in 1999, effective on June 1, 2000. *See id.* The United States and Mexico therefore have an internationally agreed means for service of process. Because there exists an agreed means of service, rule 4(d)(3)(A) is the applicable rule for determining whether service of process was properly effectuated in Mexico.

¶ 13 Rule 4(d)(3)(A) provides that service shall be made "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Utah R. Civ. P. 4(d)(3)(A). By the plain language of the rule, the terms of the Hague Service Convention therefore control whether process was properly served in Mexico.

■ ¶ 14 Article 2 of the Hague Service Convention provides that "[e]ach contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States and to proceed in conformity with [other] provisions [of the convention]." Hague Service Convention, art. 2. Article 3 of the convention provides that the "judicial officer competent under the law of the State in which the documents originate shall *forward to the Central Authority of the State ad-*

*dressed a request conforming to the model* annexed to the present Convention." Hague Service Convention, art. 3 (emphasis added). The model form is easily accessible and available on the internet. *See* Hague Conference on Private International Law, Request for Service Abroad of Judicial or Extrajudicial Documents, http://www.hcch.net/upload /act_ form14e.pdf (last visited Sep. 18, 2006). After the form is completed and sent to the destination Central Authority, the Central Authority then reviews the request, determines its compliance, and "shall *itself serve the document* or shall arrange to have it served by an appropriate agency." Hague Service Convention, art. 5 (emphasis added).

¶ 15 For purposes of effectuating international service of process under the Hague Service Convention, Mexico has designated its Central Authority as follows:

Ministry of Foreign Affairs

General Direction of Legal Affairs

Plaza Juárez No. 20, piso 5

Edificio Tlatelolco

Colonia Centro, delegación Cuauhtémoc

C.P. 06010

Mexico, Distrito Federal

Hague Conference on Private International Law, Mexico Central Authority & Practical Information, http://www.hcch.net/index_en. php?act=authorities.details&aid=267 (last visited Sep. 18, 2006). The Mexican Central Authority also lists its own website and several phone numbers and contact names for assistance. *See id.*

¶ 16 Our review of the record in this matter reflects that neither Husband nor the trial court clerk ever completed a request form conforming to the Hague Service Convention, or sent the request form along with all documents to be served upon Wife to the designated Mexican Central Authority. As a result, process was not served consistent with Articles 2 or 3 of the Hague Service Convention.

---

**2.** Although not briefed by the parties, at oral argument questions arose concerning whether the Hague Service Convention applies only to citizens or to both citizens and noncitizens of member countries. We have found no authority for such a distinction, at least as to persons residing in Mexico.

¶ 17 Furthermore, the Hague Service Convention and the country specific declarations indicate that Mexico has enacted language requirements, specifying that judicial documents, including a request form, must be in Spanish or that "when the judicial and extra-judicial documents to be served in Mexican territory are written in a language other than Spanish, they must be accompanied by the corresponding translation." Hague Conference on Private International Law, Declarations—Mexico, http://www.hcch.net/index_en.php?act=status.comment&csid=412& disp=resdn (last visited Sep. 18, 2006). Based on our review of the record, neither Husband nor the trial court clerk ever sent any accompanying Spanish translation of the documents to be served on Wife. Husband, therefore, did not comply with Mexico's language declaration concerning Article 5 of the Hague Service Convention. *See id.*[3]

¶ 18 The Hague Service Convention also "allows service to be effected without utilizing the Central Authority as long as the nation receiving service has not objected to the method used." *De James v. Magnificence Carriers, Inc.*, 654 F.2d 280, 288 (3d Cir.1981). Mexico's declaration concerning Article 10 states that Mexico is "opposed to the direct service of documents through diplomatic or consular agents." Hague Conference on Private International Law, Declarations—Mexico, http://www.hcch.net/index_en.php?act=status.comment&csid=412&disp= resdn (last visited Sep. 18, 2006). It is unclear, however, whether Mexico is categorically opposed to service via postal channels from individuals or entities that are not diplomatic or consular agents. *Compare* U.S. Department of State, Service of Legal Documents Abroad, http://travel.state.gov/law/info/judicial/judicial_680.html (last visited Sep. 18, 2006) (stating that "[s]ervice by registered mail should not be used [in Mexico], which notified the treaty repository that it objected to the method described in Article 10(a) (postal channels)"), *with* U.S. Department of State, International Judicial Assistance—Mexico, http://travel.state.gov/law/

info/judicial/judicial_677.html (last visited Sep. 18, 2006) ("There is no provision in Mexico law specifically prohibiting service by international registered mail, if enforcement of a judgment in Mexico courts is not anticipated.").

¶ 19 There remains, however, a clearly articulated and defined method for service via the Mexican Central Authority, as specified in the Hague Service Convention. Therefore, Husband's only clear alternative for effectuating service upon Wife in Mexico is by service through the designated Central Authority, which Husband failed to attempt or complete.

## II. Article 15

¶ 20 Even if we were to assume that Mexico permits service of process via direct mailing from nondiplomatic and nonconsular individuals, Husband failed to satisfy Article 15 of the Hague Service Convention for several reasons.

¶ 21 First, the initial paragraph of Article 15 states that:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, *judgment shall not be given until it is established that:*
>
> a) *the document was served* by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, *or*
>
> b) *the document was actually delivered* to the defendant or to his residence by another method provided for by this Convention[.]

Hague Service Convention, art 15, para. 1 (emphasis added). In this matter, there is no documentation establishing that the documents to be served were either served according to Mexican law or delivered to Wife or her residence in Mexico. Husband's only

---

**3.** Courts have ruled that the translation requirement of Article 5 applies only to service of documents by the foreign Central Authority, and not direct postal service. *See Greenfield v. Suzuki*

*Motor Co., Ltd.*, 776 F.Supp. 698, 701–03 (E.D.N.Y.1991); *Lemme v. Wine of Japan Imp., Inc.*, 631 F.Supp. 456, 463–64 (E.D.N.Y.1986).

documentation is an unsigned return receipt request, which evidences neither delivery nor service.

¶ 22 Second, paragraph two of Article 15 states that:

Each Contracting State shall be free to declare *that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled—*

a) the document was transmitted by one of the methods provided for in this Convention,

b) *a period of time of not less than six months,* considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Hague Service Convention, art. 15, para. 2 (emphasis added). With respect to this second paragraph in Article 15, Mexico has specifically declared that:

the Government of Mexico does not recognize the faculty of the judicial authority to give judgment *when the defendant has not appeared and there is no communication establishing that the document was served, or that documents* originating outside the country *were indeed delivered,* according to sub-paragraphs a) and b) of the first paragraph.

Hague Conference on Private International Law, Declarations—Mexico, http://www.hcch.net/index_en.php?act=status.comment&csid=412&disp=resdn (last visited Sep. 18, 2006) (emphasis added). Therefore, according to the Mexican declarations under the Hague Service Convention, Mexico does not recognize default judgments of foreign judicial authorities where the defendant has not appeared and there is no communication that the documents were served or delivered. *See id.* Because Wife did not personally appear, and there is no evidence that the documents were served or delivered to Wife, the second paragraph of Article 15 is not applicable.

¶ 23 Third, even assuming that the second paragraph of Article 15 of the convention could apply in this case, the six-month waiting requirement has not been met. Under Article 15, paragraph two, subpart (b), in order for the requesting State to have authority to enter default judgment against a defendant without a certificate of service and without documentation of delivery, "a period of time of not less than six months, considered adequate by the judge in the particular case, [must have] elapsed since the date of the transmission of the document." Hague Service Convention, art. 15, para. 2(b). In the instant matter, the documents were mailed by the court clerk on November 10, 2003, and the trial court entered default decree of divorce on February 20, 2004. As a result, six months did not elapse between the alleged transmission of the documents and the entry of judgment. Therefore, Article 15, paragraph two, subpart (b), was not satisfied.

### III.  Actual Notice

¶ 24 Husband argues in his brief that Wife "had actual notice of the proceedings" and that this "falls within the scope of 'reasonably calculated to give notice'" under rule 4 of the Utah Rules of Civil Procedure. Utah R. Civ. P. 4. However, actual notice does not satisfy the requirements of rule 4.

¶ 25 "Service of summons in conformance with the mode prescribed by statute is deemed jurisdictional, for it is service of process, not actual knowledge of the commencement of the action, which confers jurisdiction." *Murdock v. Blake,* 26 Utah 2d 22, 484 P.2d 164, 167 (1971). "The proper issuance and service of summons is the means of invoking the jurisdiction of the court and of acquiring jurisdiction over the defendant; *these cannot be supplanted by mere notice by letter, telephone or any other such means."* *Id.* (emphasis added). As a result, whether Wife had actual notice is immaterial because such notice cannot supplant the jurisdictional requirements of rule 4 of the Utah Rules of Civil Procedure.

## CONCLUSION

¶ 26 Husband has failed to properly serve Wife according to rule 4(d) of the Utah Rules of Civil Procedure and the Hague Service Convention. As a result, service of process was not properly effectuated and the trial court lacks personal jurisdiction. We therefore reverse the trial court's denial of Wife's motion to set aside the default decree of divorce.

¶ 27 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.