Skinner, Respondent, vs. Mueller, Appellant.
[Two cases.]

*June 3—June 26, 1957.*

330

For the appellant there were briefs by *Stafford, Pfiffner &
Stafford* of Chippewa Falls, and oral argument by *Robert F.
Pfiffner*.

For the respondents there was a brief by *Falge & Moran*
of Ladysmith, and oral argument by *James P. Moran*.

STEINLE, J.    The defendant, John Mueller, contends that
the service of the summons and complaint in each action was

invalid for lack of compliance with provisions of sec. 85.05 (6), Stats. That statute provides as follows:

"The use and operation by a nonresident of a motor vehicle over the highways of Wisconsin shall be deemed an irrevocable appointment binding upon him, his executor, administrator, or personal representative by such nonresident of the commissioner of the motor vehicle department to be his true and lawful attorney upon whom may be served all legal processes in any action or proceeding against him, or his executor, administrator, or personal representative, growing out of the use or operation of the motor vehicle in this state resulting in damage or loss to person or property, whether the damage or loss occurs on a public highway or on abutting public or private property, and said use or operation shall be a signification of his agreement that any such process against him or his executor, administrator, or personal representative, which is so served shall be of the same legal force and validity as if served on him personally, or his executor, administrator, or personal representative. The commissioner as such attorney shall upon being served with such process forthwith mail by registered mail a copy of the papers served to such nonresident at the address given in the papers so served. It shall be the duty of the party or his attorney to certify in the papers so served that the address given therein is the last-known address of the nonresident to be served. In all cases of service hereunder there shall be served the original and the number of copies that there are defendants so served in the action, the original to be returned with proper certificate of service attached for filing in court as proof of service of the copies by having mailed them by registered mail to the defendants named therein. The service fee shall be $2 for each defendant so served. The commissioner shall keep a record of all such processes which shall show the day and hour of service."

It appears without dispute that the number of copies of the process furnished to the commissioner by the plaintiffs was sufficient only for mailing to Mueller at one of the ad-

dresses certified by the plaintiffs. The commissioner sent the same by registered mail to the Minnesota address. The mail was returned by the postal authorities to the commissioner, and he informed the plaintiffs that it had been returned with notation that Mueller could not be found at the Minnesota address. Mueller did not receive it. There was no mailing to the Michigan address.

The defendants contend that (1) since the plaintiffs certified two last-known addresses of Mueller (Minnesota and Michigan), it became their duty under the statute to have supplied the commissioner with sufficient copies for mailing to each of said addresses, and that mailing to each place was essential for compliance with the statute, and (2) since the plaintiffs had knowledge, as indicated by defendants' affidavits, that the most likely place where Mueller would have received mail was at the Michigan address, the failure of the plaintiffs to have furnished the commissioner with copies for mailing there, constituted a fatal defect in the service. The plaintiffs maintain that their furnishing of sufficient copies to the commissioner for mailing to the Minnesota address, coupled with the commissioner's mailing of the same there, fulfilled the requirements of the statute.

Defendant's attorney and defendant carrier's claim representative in their respective affidavits asserted that Emery Bruce had informed them that he was present when Mueller told Traffic Officer Wilson at the scene of the accident that he was on his way to pick up his family and was going to move them to Michigan; further, that Bruce's wife, Emily, and his daughter, the plaintiff, Elvina Skinner, both of whom were passengers in the Bruce vehicle at the time of the collision, had told affiants that sometime after the accident, but before the year 1955, Bruce had stated to them that he was present when Mueller told Traffic Officer Wilson, at the scene of the accident, that he was going to pick up his family to move them into Michigan.

John Mueller in his affidavit dated April 13, 1956, stated that within a few days after March 12, 1954, he moved his family from Minneapolis, Minnesota, to Marquette, Michigan, where he and the family resided until December 1, 1955, when they moved to Iron Mountain, Michigan, where they have since lived. He also asserted that within a couple of weeks after the accident in question he received at his business address in Marquette, Michigan, a request from the Wisconsin motor vehicle department for a report of the accident. In his affidavit Mueller also stated that at the scene of the accident and in the presence of the occupants of the Bruce vehicle, he informed Traffic Officer Wilson that he had secured quarters for his family at Marquette, Michigan; further, that he was moving there within the next few days, and that persons desiring to reach him by mail or otherwise could do so by contacting him at his Marquette, Michigan, address, to wit, 29 East Michigan street (business address).

Emery Bruce in his affidavit asserted that "immediately after the accident he heard John Mueller give the police officer his Minneapolis address, and admits that John Mueller at that time, stated that he was going to move his family to Michigan; that he did not hear John Mueller give any Michigan address or give any city in Michigan; that your affiant does not know if John Mueller ever moved to Michigan; that the only address he had for John Mueller was the Minneapolis address given by Mueller to the police officer."

Emily Bruce in her affidavit stated that "deponent received serious personal injuries as a result of said accident; that deponent did not hear the said John Mueller give anyone his address; that her husband later told her that John Mueller lived in Minneapolis, Minnesota, but was moving his family to Michigan; that deponent does not know if John Mueller ever moved to Michigan; that deponent knew of only one address of John Mueller that being 74 Spruce place,

Minneapolis, Minnesota; that deponent has never been informed of any other address of the said John Mueller."

Elvina Skinner in her affidavit stated that "deponent received serious personal injuries as a result of said accident; that deponent did not hear the said John Mueller give anyone his address; that deponent's father later told her that John Mueller lived in Minneapolis but was moving to Michigan; that deponent does not know if John Mueller ever moved to Michigan; that the deponent knew of only one address of the said John Mueller that being 74 Spruce place, Minneapolis, Minnesota; that deponent has never been informed of any other address of the said John Mueller."

Mueller's appointment of the commissioner as his attorney for the service of the process was an accomplished fact on the date of the accident, and was irrevocable. See *Waddell v. Mamat* (1955), 271 Wis. 176, 72 N. W. (2d) 763.

Actual notice to a nonresident defendant in an automobile damage action, to whom notice has been sent by mail in accordance with statutory form, is not essential to due process. *Sorenson v. Stowers* (1947), 251 Wis. 398, 401, 29 N. W. (2d) 512. The mere fact that the defendant Mueller had not received notice of the pending action, is of no material consequence in a consideration of whether the court had obtained jurisdiction over his person. Sec. 85.05 (6), Stats., requires that the party or his attorney certify in the papers served on the commissioner that the address given therein is the last-known address of the nonresident to be served. In *Waddell v. Mamat, supra,* it was held that the last-known address is the one most likely to give the party to be served notice, although actual notice is not essential. In *State ex rel. Cronkhite v. Belden* (1927), 193 Wis. 145, 211 N. W. 916, 214 N. W. 460, it was determined that the plaintiff was obliged at his peril to have ascertained the last-known address of the nonresident under the statute, and that the last-known address meant last-known address of the defend-

ant as a matter of fact. However, the requirement as laid down in the *Cronkhite Case* was specifically overruled in *Sorenson v. Stowers, supra,* and it was there held that the plaintiff was entitled to rely on the address stated in the police report, and that he was not obliged at his peril to ascertain the absolute last or true address of the defendant. In the *Sorenson Case* there was no knowledge that the defendant had moved from the address stated in the police report. In the instant case two addresses of Mueller are stated in the police report, one appearing to be that of his residence, and the other that of his business. There is no indication in the police report that he was intending to change the place of his residence. In her affidavit Elvina Skinner acknowledges that sometime after the accident her father, Emery Bruce, told her that Mueller lived in Minneapolis, but was moving to Michigan. It does not appear from any of the affidavits that she had actual knowledge at the time of serving the commissioner that Mueller had moved to Michigan. From the affidavits it appears that while Mueller had moved to Marquette, Michigan, he later moved to Iron Mountain, Michigan, and was living there when the commissioner was served. It does not appear from the affidavits that when the commissioner was served, Mueller's business address was still at the place in Michigan as stated in the police report. There is no showing that when the plaintiffs served the commissioner, they had knowledge of the fact claimed by the defendants that a couple of weeks after the accident, the commissioner had sent a communication to Mueller at the business address, which was received by him. Since it does not appear that when the plaintiffs served the commissioner, Mueller's business address was still that as stated in the police report, it would be sheer speculation to determine that it was more likely that he would have received mail at the Michigan address rather than at the Minnesota address. In *Sorenson v. Stowers, supra,* it was pointed out that under

United States postal regulations then existing, requests for the forwarding of mail would be observed for a period up to two years, unless the request was revoked. At the time that the plaintiffs presented the papers to the commissioner, they were entitled to believe that since the Minnesota address given by Mueller was that of his residence, he would have arranged for a forwarding address had he moved from there, and that the papers would be forwarded to him by the postal authorities.

Under the circumstances reflected of record it would be unreasonable to hold that the plaintiffs were obliged to trace Mueller's various movings after he left the Minnesota address in order to precisely ascertain at which place he was established, and as to where mail would with certainty reach him. They were entitled to rely upon the addresses which appear in the police report. Under the circumstances they were not required at their peril to do more than certify such addresses.

Since it cannot be held that it was more likely that Mueller would have received the mail from the commissioner had it been sent to the Michigan address rather than to that in Minnesota, the plaintiffs did not fail to comply with the statute by furnishing to the commissioner only sufficient copies for mailing to one of the two addresses which they had obtained from the police report, and had been certified by them. Likewise, for the reason that it does not appear that there was a better chance that mail would reach Mueller at the Michigan address rather than at the Minnesota address, the commissioner under the circumstances was entitled to select for the mailing either one of the two addresses certified, and his action in such regard as agent of Mueller became binding on Mueller. The sending of the papers by registered mail to the Minnesota address constituted compliance with the mailing requirement of the statute.

*By the Court.*—Orders affirmed.