Alice Ione Halstead COLLEY, as personal representative of Jody Glenn Dodgion, deceased, and as administratrix of the Estate of Jody Glenn Dodgion, deceased, and on behalf of Alice Ione Halstead, as guardian and guardian ad litem for Jordan Jody Halstead; and on behalf of Judy Butler, Glenn Dodgion, Bryan Lee Butler, Amanda Colleen Butler, and Kayla Dawn Butler, Appellant (Plaintiff),

v.

Teddy Ray DYER, Appellee (Defendant).

No. 90–210.

Supreme Court of Wyoming.

Dec. 2, 1991.

Daniel M. Hesse of Meyer and Williams, Jackson, for appellant.

David B. Hooper of Hooper Law Associates, P.C., Riverton, for appellee.

Before URBIGKIT, C.J., THOMAS, CARDINE and GOLDEN, JJ., and KALOKATHIS, District Judge.

KALOKATHIS, District Judge.

This case concerns an appeal in a wrongful death action taken by appellant, Alice Ione Halstead Colley and those she represents, against appellee, Teddy Ray Dyer, from a district court order dismissing the complaint upon the grounds of insufficiency of service of process. Dyer was the driver of the vehicle involved in an accident resulting in fatal injuries to his passenger, Jody Glenn Dodgion, when the vehicle struck a cable strung across the exit road from the Green River, Wyoming landfill.

A heavy steel chain attached to the end of the cable came through the back window of the vehicle, striking Dodgion in the head.

Soon after filing her complaint, Colley unsuccessfully attempted to make personal service of process upon Dyer at "B & R Trailer Court, Rock Springs, Wyoming 82901." The return on the summons indicated that the deputy sheriff was "[u]nable to locate" Dyer. Colley then pursued service of process under Wyoming's non-resident motorist statute, Wyo.Stat. § 1–6–301 (1988). That statute provides for substitute service of process on the secretary of state and requires that notice of such service, along with a copy of the process, be served upon a defendant either personally or by certified mail to his last known address. The plaintiff must file an affidavit of compliance with the clerk of the court.[1] Colley's attorney filed an affidavit stating that notice was sent to Dyer at "B & R Trailer Court, Rock Springs, Wyoming 82901;" to an insurance adjuster in care of State Farm Insurance Company; and, to Dyer's and Dodgion's employer who, at the time of the accident, owned the vehicle involved in the accident.

An answer was filed by Dyer through counsel hired by the insurance company to defend him. That answer raised various affirmative defenses, including allegations that process and service of process were defective.

W.R.C.P. 12(h) affords an option as to certain defenses. The defenses of insufficiency of process and insufficiency of service of process may be asserted in a responsive pleading or made by motion. The defenses at issue were properly raised in the answer. These defenses were pre-

---

1. Wyo.Stat. § 1–6–301 states in part:

(a) The use and operation of a motor vehicle on any street or highway within Wyoming by any person upon whom service of process cannot be made within Wyoming either personally or by service upon a duly appointed resident agent is deemed an appointment of the secretary of state of Wyoming as the operator's lawful attorney upon whom may be served all legal processes in any proceeding against him * * *. Such operation constitutes the operator's agreement that any process served in any action against him * * *

has the same legal force and validity as if served upon him * * *. Service shall be made by serving a copy of the process upon the secretary of state * * *. Within ten (10) days after the date of service, notice of such service and a copy of the process shall be served upon the defendant * * * either personally or by certified mail addressed to the last known address of the defendant * * *. The plaintiff shall file with the clerk of the court in which the action is brought an affidavit that he has complied with such requirement.

served throughout the proceeding as evidenced by Dyer's pretrial memorandum and were never waived.[2]

Thus, the issue presented for resolution involves the question of whether the certified mailing of notice to Dyer at "B & R Trailer Court, Rock Springs, Wyoming 82901," without any reference to trailer space # 57 where Dyer once resided, satisfies the requirements of Wyo.Stat. § 1–6–301. Before this question can be answered, the requirements of Wyo.Stat. § 1–6–301 must be defined. This exercise necessarily implicates federal due process.

■ In *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928), the court held that a non-resident motorist statute which contained no provision for attempted notice to a non-resident defendant violated due process. The due process standard required notice to the defendant, "so as to make it reasonably probable that he will receive actual notice." *Id.* at 19, 48 S.Ct. at 260.

After *Wuchter*, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) refined the federal due process standard.

*Mullane* involved the sufficiency of notice by publication. Recognizing that an absent defendant does not have an absolute right to be notified of the proceedings, a qualified right emerged which placed into the balance the interest of the state. The application of the balancing test led to the conclusion that statutory publication notice was sufficient for those, "whose interests or whereabouts could not with due diligence be ascertained * * *." *Id.* at 317, 70 S.Ct. at 659. Thus, the court, in effect, held that substitute service was available only upon an initial showing of a diligent effort to locate the absent defendant.

This approach was affirmed in *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988) (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 2711 n. 4, 77 L.Ed.2d 180 (1983)), and was extended to protect creditors in a probate proceeding which required the personal representative to make " 'reasonably diligent efforts' " to identify creditors of the estate, rather than relying on publication notice alone.

Since federal due process requires that a diligent effort be made to locate an absent defendant before means of substitute service become available, we must interpret Wyo.Stat. § 1–6–301 in light of this requirement.

In other jurisdictions, non-resident motorist statutes providing that notice be sent to a defendant's last known address have been interpreted to require the plaintiff to exercise due diligence in attempting to locate the absent defendant, or in ascertaining the defendant's last known address. The cases applying a diligence requirement have done so to comply with the *Wuchter* standard, i.e., that it be reasonably probable that the defendant receive actual notice. *See Halliman v. Stiles*, 250 Ark. 249, 464 S.W.2d 573 (1971) and *Drinkard v. Eastern Airlines, Inc.*, 290 S.W.2d 175 (Mo. App.1956).

In two recent opinions, the Washington and Utah Supreme Courts, seeking to meet the constitutional requirements of *Mullane*, have concluded that a diligence requirement is a necessary component to their respective non-resident motorist statutes. *See Carlson v. Bos*, 740 P.2d 1269 (Utah 1987) and *Martin v. Meier*, 111 Wash.2d 471, 760 P.2d 925 (1988) (statute included a due diligence requirement).

As set out in *Mullane*, a balancing test must be applied which weighs the interests of Dyer against the interests of the state in order to determine the proper form of notice. The state has an interest in ensuring safe highways and streets. The legislature

---

**2.** Historically, counsel would have been required to make a special appearance for the single purpose of attacking insufficiency of process or lack of in personam jurisdiction. This is no longer required. As W.R.C.P. 12 indicates, the distinction between general and special appearances has been eliminated. Counsel has the option of raising the defense by motion or by raising the defense by answer. *See* 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1362 at 451 (1990).

has expressed the state's interest in making certain that its residents have available to them a local forum in which to resolve their legal disputes with non-resident motorists.[3] Dyer's interest is to receive notice of the pending action against him and to have the opportunity to defend against that action. Thus, we interpret Wyo.Stat. § 1–6–301 to implicitly require the plaintiff to exercise due diligence in attempting to locate an absent defendant.

Knowing that diligent efforts to locate Dyer are required, we must ask what comprises the "diligent efforts" needed to satisfy federal due process.

Concerning the concept of due diligence, the Supreme Court of Utah stated:

"The diligence to be pursued and shown ... is that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address ... of the person on whom service is sought.... Due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so."

*Carlson*, 740 P.2d at 1277 n. 13 (quoting *Parker v. Ross*, 117 Utah 417, 217 P.2d 373, 379 (1950)).

We apply this concept in the instant case to determine whether diligent efforts were taken to locate Dyer.

After an unsuccessful attempt to personally serve Dyer at the B & R Trailer Court, Colley resorted to Wyo.Stat. § 1–6–301 for substitute service, relying on information obtained through an investigator who, almost two years after the accident, contacted Dyer's sister, Cherry McVicker. McVicker informed him that a month or two after the accident, Dyer left the state and that she had not seen or heard from him since.

The record does not show that anything else was done to ascertain Dyer's present whereabouts. The investigator and Colley were apparently content that Dyer could not be found and that his last known address was "B & R Trailer Court, Rock Springs, Wyoming 82901." If no further investigation was undertaken, then mailing notice to this address, with or without designating space # 57, falls short of the diligence required by federal due process. Moreover, this mailing, in lieu of further efforts to ascertain Dyer's whereabouts, did little if anything to assure that Dyer would receive notice of the pending action. The diligence requirement of due process means more than a simple ascertainment of the last known address. Diligence must be applied in locating the absent defendant. This necessarily involves an attempt to develop and exhaust leads which a person normally leaves behind in the course of living. Whether Dyer had friends and/or family (parents, brothers, sisters, ex-wives, children); where these people were located; whether they had heard from Dyer or knew of his recent whereabouts, are matters for Colley's investigator. The record is not clear whether such efforts were undertaken. We will afford Colley the opportunity to develop this portion of the record.

The record shows that notice was sent to the insurance company which was the insurer of the vehicle owned by Dyer's employer and which vehicle was involved in the accident. At best, such notice is evidence of due diligence. Service of notice on the insurance company is not notice to the absent defendant. The insurance company is not the real party in interest, nor a designated agent for service of notice.

Notice to the insurance company, standing alone, will not satisfy due diligence. The plaintiff has a duty to exercise due diligence as federal due process requires. The plaintiff cannot expect the insurance company to carry out that duty.[4]

See Annotation, *Validity of Substituted Service of Process Upon Liability Insurer of Unavailable Tortfeasor,* 17 A.L.R.4th 918 (1982). Absent statutory authorization, which is the case in

---

3.  *See* n. 1, *supra.*

4.  Some jurisdictions allow service on a party's insurer. However, such jurisdictions have statutory provisions authorizing this procedure.

This is not to say that we discourage a plaintiff from forwarding notice to an insurance company. The insurance company might be able to locate the absent defendant, and this would solve the notice problem. We merely caution plaintiffs not to rely on this notice as an exclusive means of due process.

■■ Since the enactment of Wyo.Stat. § 1–6–301, this court has not been called to pass upon its interpretation. Hence, a plaintiff seeking to perfect process under that statute might well be led to believe that service mailed to the last known address suffices, without regard to the requirement of due diligence. We note that the requirement of due diligence was not explored in the district court. It is for this reason that the matter will be remanded for a determination of whether Colley exercised due diligence in locating the absent defendant.[5] *See Carlson,* 740 P.2d 1269.

Reversed and remanded for further proceedings consistent with this opinion.

URBIGKIT, C.J., files a specially concurring opinion.

THOMAS, J., files a dissenting opinion.

URBIGKIT, Chief Justice, specially concurring.

I concur with the majority that the district court dismissal should be reversed. I do not agree, however, that notice to the motor vehicle owner's liability insurance carrier, as the real party in interest, is insignificant or ineffective under these circumstances, and would also perceive that the diligence requirement for service was realistically satisfied. This is the third appearance in this court of this case, very different in subject, following the fatal injury of Jody Glenn Dodgion who was killed after personnel of the City of Green River unexpectedly put up a cable at the entrance to the city's landfill dump while decedent and the vehicle driver were in the facility unloading trash. On exit, the restrung cable caused the fatal injury. *See State ex rel. Wyoming Workers' Compensation Div. v. Halstead,* 795 P.2d 760 (Wyo.1990) and *Butler v. Halstead By and Through Colley,* 770 P.2d 698 (Wyo.1989). Here we consider how to sue the negligent driver who disappeared shortly after the fatal drive out of the city dump.

The procedural events deserve consideration since this appeal addresses jurisdiction and proper service of process. The broad issue presented is the efficacy of the Wyoming non-resident motor statute where the defendant vehicle driver, Teddy Ray Dyer, disappeared very shortly after the fatal accident. The liability insurance carrier defended for several years in behalf of Dyer until, in the late stages of the proceeding, a motion to dismiss was granted on the basis that proper service of process to provide jurisdiction was never obtained.[1]

Sequentially, the events developed following the September 24, 1985 fatal accident with the filing of a lawsuit on September 23, 1987 against both the City of Green River, which ultimately settled out, and the vehicle driver, Dyer. The vehicle was owned by the employer, Steven Boyd; driven by Dyer, age twenty-seven; occupied by Jody Glenn Dodgion, age sixteen; and insured by State Farm Mutual Automobile Insurance Company for liability coverage. Non-resident motorist statute service, W.S.

Wyoming, service of notice cannot be effected in this manner.

**5.** Upon a determination that due diligence has been exercised, the next question is whether the "last known address" requirement of Wyo.Stat. § 1–6–301 necessitated the designation of space # 57. We adopt the view that a party may rely upon the address given to the investigating authorities. *See Swift v. Leasure,* 285 A.2d 428 (Del.Super.1971); *Kraft v. Bahr,* 256 Iowa 822, 128 N.W.2d 261 (1964); and *Sorenson v. Stowers,* 251 Wis. 398, 29 N.W.2d 512 (1947). In this case, the accident report shows the address as

"B & R Trailer Court, Rock Springs, Wyoming 82901" without designating space # 57.

**1.** The district court determined that a motion to dismiss should be granted on the basis of defective process, service of process and proof of process and stated in opinion letter:

Since we know Mr. Dyer was not personally served, that B & R Trailer Court, Rock Springs, Wyoming 82901, was not his last known address, and that it is questionable whether, or not, he was a non-resident, the Court finds that service is defective.

1-6-301, through actual service on the Secretary of State was initiated by summons served in Cheyenne, Wyoming and filed on October 27, 1987. State Farm, following receipt of the non-resident motorist service notice on its resident adjuster, employed counsel who filed an answer in behalf of Dyer on November 12, 1987. That answer, in addition to the normal vehicle accident admissions and denials, included as an affirmative allegation, "Process and service of process are defective."

The affidavit in support of the non-resident motorist statute service stated in part:

3. That to the best of my knowledge, Teddy Ray Dyer, a Defendant in the above-captioned action, is a non-resident of the State of Wyoming and that the specific place and address and whereabouts of said Defendant are unknown to me.

4. That I have attempted to serve Defendant Teddy Ray Dyer with a Summons and Complaint in the above-captioned action by delivering same to the Sheriff's Office in and for the County of Sweetwater, State of Wyoming, and that said Sheriff's Office has returned said Summons and Complaint to my office after unsuccessfully attempting to serve said Defendant at his last known address.

5. That pursuant to Section 1-6-301, W.S. (1977, as amended), I have served a Summons and Complaint in the above-captioned action upon the Secretary of State of Wyoming, who is deemed to be the lawful attorney of Defendant Teddy Ray Dyer pursuant to Section 1-6-301, W.S. (1977, as amended).

6. That within ten (10) days after the above-described service on the Secretary of State of Wyoming, I mailed, by certified mail, notice of said service, in the attached form, together with a copy of the Summons issued to the Secretary of State and a copy of the Complaint in the above-captioned action upon the Defendant Teddy Ray Dyer at his last known address which is as follows:

Teddy Ray Dyer
B & R Trailer Court
Rock Springs, Wyoming 82901

7. That within ten (10) days after the above-described service on the Secretary of State of Wyoming, I mailed, by certified mail, notice of said service, in the attached form, together with a copy of the Summons issued to the Secretary of State and a copy of the Complaint in the above-captioned action to: Mr. Frank Rolich, c/o State Farm Insurance Company; P.O. Box 2131; Rock Springs, WY 82902. Mr. Rolich is an insurance adjuster for State Farm Insurance Company, which I believed to be the insurance carrier which will provide a defense and coverage to the Defendant Teddy Ray Dyer for the accident which forms the basis of Plaintiff's Complaint.

8. That within ten (10) days after the above-described service on the Secretary of State of Wyoming, I mailed, by certified mail, notice of said service, in the attached form, together with a copy of the Summons issued to the Secretary of State and a copy of the Complaint in the above-captioned action to: Mr. Steven Boyd; 1136 6th Avenue, Southeast; Albany, OR 97321. Mr. Boyd was the owner of Rock Springs Roofing, the employer of Defendant Teddy Ray Dyer and Plaintiff's decedent, Jody Glenn Dodgion, at the time of the accident in question. Mr. Boyd and/or his business, Rock Springs Roofing, was the owner of the vehicle involved in the accident in question.

[Signed and sworn to by an attorney for Colley.]

The next action on service and jurisdiction during the time the case proceeded through discovery and trial preparation followed nearly two years later on August 8, 1989. Counsel employed by State Farm to represent Dyer then filed a "Motion to Withdraw as Counsel for Defendant Teddy Ray Dyer" which, after reciting the status of the parties and noting a possible co-employee insurance policy exclusion, stated:

5. Approximately two years after the accident this suit was filed. Defendant Teddy Ray Dyer had departed the State

by that time and since the inception of this suit no one has been able to locate Dyer. Dyer was served under the long arm statute through the Secretary of State.

6. Upon receipt of the Complaint, State Farm was certain that it had no coverage for Dyer under the Boyd/Rock Springs Roofing policy but to be certain no rights were prejudiced, State Farm hired the undersigned to defend Dyer until a judicial determination of coverage could be obtained. State Farm then caused United States District Court for the District of Wyoming Civil Action C88–148–B to be filed for declaratory relief.

7. A final decision in said civil action has now been obtained and a copy of the Declaratory Judgment is attached hereto and incorporated herein by this reference. According to said Judgment Defendant Dyer has no coverage under the Boyd/Rock Springs Roofing policy and State Farm has no obligation to defend Dyer in this action.

8. Further, none of the other parties to this case have a claim against State Farm.

9. Defendant Dyer cannot be given notice of this Motion because he cannot be located (see Affidavit of Frank Rolich also attached and incorporated herein by this reference) but Defendant Dyer has never been aware the undersigned has been defending him to the best knowledge and belief of the undersigned.

10. Pursuant to the attached Declaratory Judgment State Farm has requested the undersigned to terminate representation of defendant Dyer.

The affidavit of insurance adjuster Frank Rolich[2] stated relative to Dyer:

1. I have been employed by plaintiff State Farm Mutual Automobile Insurance Company as a field claim representative in its Rock Springs, Wyoming, office at all times pertinent to the above-entitled action. I make this affidavit in support of the plaintiff's motion for sum-

mary judgment pursuant to Fed.R.Civ.P. 56.

2. Following notification to plaintiff of the September 24, 1985 accident involving a 1978 Chevrolet pickup truck owned by plaintiff's insured, Steven Boyd, I was assigned to investigate the accident on plaintiff's behalf.

3. During the course and scope of that investigation, I met with Teddy Ray Dyer (Dyer) on October 15, 1985 at which time he refused to discuss the factual circumstances surrounding said accident, although he did discuss his employment status, and that of Jody Dodgion, by Steven Boyd. On that date, at my request, he signed a nonwaiver agreement in my presence, a true and correct copy of which is attached hereto as Exhibit A.

4. On or about Nov. 6, 1985 I again spoke with Mr. Dyer and requested that he furnish a factual statement of the circumstances surrounding the September 24, 1985 accident, which he refused to do.

5. Thereafter, and sometime prior to January 18, 1986, I was informed that Mr. Dyer had left his last-known address in Rock Springs, Wyoming. I have not seen or spoken with Mr. Dyer since 11–6–86 or about.

6. In November 1987 in the course of my employment with plaintiff, I was directed by plaintiff to attempt to locate Mr. Dyer. To that end:

a. I located Mr. Dyer's sister, Mrs. Scott McVickers [sic], and personally interviewed her at her Rock Springs, Wyoming, residence on Jan. 12, 1988. Mrs. McVickers [sic] informed me that she did not know Mr. Dyer's whereabouts at that time; that she had last heard from him about one year previously when Dyer was living in Payette, Idaho; that she thought Dyer had voluntarily left the Rock Springs area, among other reasons, in order to avoid possible criminal prosecution.

b. Thereafter I made referrals to Idaho and Oregon in an effort to locate Mr.

---

**2.** As a matter of academic interest, the adjuster, Frank Rolich, succeeded this writer as staff ad-

juster for State Farm in the Rock Springs office more than thirty-five years ago.

Dyer. As a result I received information from the Oregon Department of Motor Vehicles records, that, as of September 25, 1986, Dyer's Oregon driver's license showed his address as General Delivery, Vernonia, Oregon. Mr. Dyer was not, however, successfully located in either Oregon or Idaho.

An order was entered by the district court permitting withdrawal by the attorney representing Dyer on August 8, 1989 and then later, he was directed by his client, the insurance company, to re-enter an appearance in behalf of Dyer which was accomplished by general appearance filed September 7, 1989 *without any reservation.*

A joint pretrial memorandum of the parties was filed August 14, 1989 which addressed the jurisdiction and service of process issues. The joint pretrial memorandum was not signed by counsel for Dyer. The memorandum addressed the coverage question:

*By the Defendant Teddy Ray Dyer:*

a. Whether plaintiff's process and service of process are defective as to Defendant Dyer.

b. Whether counsel for Defendant Teddy Ray Dyer should be allowed to withdraw from his representation of said defendant by reason of the Declaratory Judgment entered in United States District Court for the District of Wyoming, Civil No. C88–148–B, State Farm v. Teddy Ray Dyer, et al.

Counsel for Dyer followed the filing of the pretrial memorandum with a comprehensive Motion in Limine on August 18, 1989.

Appellants then made an apparent mistake in filing a motion to strike the answer of Dyer who failed to appear for a deposition (since no one knew where he was and obviously he did not know the deposition was scheduled). In response to the motion, counsel representing Dyer stated in part:

1. This action was commenced by plaintiffs attempting to make service on defendant Dyer through the Secretary of State. However, plaintiffs have been unable to complete such service as they were unable to provide the Secretary of State with a current address for defendant Dyer. As such, defendant Dyer has never received notice of this law suit. Plaintiffs served Dyer's former employer and Frank Rolich, adjuster for State Farm instead of defendant Dyer.

2. The undersigned filed an Answer on behalf of said defendant because the allegations in the Complaint raised an issue as to the duty to defendant said defend [sic] under the provisions of the State Farm insurance policy maintained on the vehicle operated by said defendant at the time of the accident complained of in the Complaint filed by plaintiffs.

3. In the Answer filed on behalf of said defendant, the failure to obtain personal service was noted or was the issue of whether this Court can exercise in personam jurisdiction over the defendant Dyer without affecting personal service.

4. The undersigned has never learned the location of defendant Dyer, and, thus has been unable to advise him of any deposition settings including his own, a fact well known to plaintiffs' [sic] before they noticed said defendant for deposition.

5. It is improper under Rule 37 WRCP to strike pleadings without a showing that said defendant would provide new and relevant evidence not already know[n] to plaintiff from other sources *Waldrop v. Weaver,* 702 P.2d 1291 (Wyo.1985).

The district court responded to the deposition taking conflict and pleading filings by a letter of January 3, 1990, which stated in part:

It appears that prior to ruling on Plaintiffs' Motion, the Court must rule on the question of proper service on Defendant Dyer. This defense was raised in his answer, in the Joint Pretrial Memorandum, as well as at the attempted deposition. It would seem that this issue should be resolved sooner than 30 days prior to trial.

The Court will reserve ruling on Plaintiffs' Motion until the service issue is resolved. Furthermore, I would want

confirmation from Mr. Hooper whether Mr. Dyer is, or is not, testifying as a witness. It appears from the pretrial memo that he is testifying and a summary of his testimony is given, but from the Response to the Motion, it appears his whereabouts have not been known to Mr. Hooper.

A motion to dismiss was filed February 6, 1990 stating:

COMES NOW the defendant Teddy Ray Dyer, through counsel, and moves the Court to dismiss the Complaint filed herein for the reason that process, service of process and proof of process are all defective under Rule 4, WRCP and W.S. § 1–6–301 (1977, as amended) and the Court is, therefore, without jurisdiction over said defendant.

This pleading came nearly two and one-half years after the litigation had been started following two entries of appearance by counsel employed by State Farm to defend in behalf of Dyer. Each party filed briefs with supporting documentation addressing the jurisdiction and service of process issues and the district court then ruled:

The above matter is before the Court on Defendant Dyer's Motion to Dismiss on the issue of defective process, service of process and proof of process.

The Court agrees with Defendant's argument and authorities cited in his brief and reply letter dated March 7, 1990. In reading the affidavits attached to Plaintiff's brief, it is quite apparent that Mr. Dyer was neither personally served nor was he attempted to be served by certified mail at his last known address.

Mr. Tennyson's affidavit places Mr. Dyer's last known address as "B & R Trailer Court, Rock Springs, Wyoming 82901." [Plaintiff's Exhibit A.] However, Cherryl McVicker, sister of Teddy Dyer, stated that Mr. Dyer's last known address was "B & R Trailer Court, # 57,

Rock Springs, Wyoming 82901." [Plaintiff's Exhibit D.] Even disregarding the fact that B & R Trailer Court is not in Rock Springs, there is a big difference in naming a trailer court as an address and naming a specific trailer space in that court. The "# 57" does distinguish that space from the other 140 plus spaces in B & R.

Although Deputy Pappas does not state that he went to # 57, the Court accepts the conclusion that he did go to the correct space. His affidavit is lacking in facts, such as how the Sheriff's Office knew the correct number of Mr. Dyer's sister's trailer number. [Plaintiff's Exhibit G.] It would appear that if the Deputy knew the correct number, the Plaintiff also could have discovered the "last known address."

The affidavits are full of conclusions, such as "he (Teddy Dyer) left the state of Wyoming." [Plaintiff's Exhibit D.] But Cherryl McVicker goes on to say Dyer did not inform herself or anyone in her family where he was going.

Since we know Mr. Dyer was not personally served, that B & R Trailer Court, Rock Springs, Wyoming 82901, was not his last known address, and that it is questionable whether, or not, he was a non-resident, the Court finds that service is defective. Mr. Hooper shall prepare the Order and submit it to Mr. Hesse for approval as to form.

The facts in this record are essentially uncontroverted, but seem confused in recitation and decision.[3]

What did happen to Dyer is best stated in the uncontroverted affidavit of his sister, Cherryl McVicker:

1. That I am a sister of defendant Teddy Ray Dyer and I presently reside at 1638 Elk St., # 55, Rock Springs, Wyoming 82901.

---

**3.** Attached to appellant's brief filed in this court is extensive material from State Farm's records reflecting efforts to locate the driver. Those materials *are not contained* in the present record by affidavit, attachment, or otherwise and likely *were not* considered by the district court in decision. They do not create any real factual conflicts. The search reports and insurance company details are more comprehensive than other documentation, but essentially define the same efforts described by the adjuster in the unsuccessful effort to find Dyer.

2. That prior to 9/24/85 I was always aware of the whereabouts of my brother Teddy Ray Dyer and knew him to be residing at the Imperial Apartments # F2 in Rock Springs, Wyoming up until 9/24/85.

3. That on the night of 9/24/85, my brother Teddy Ray Dyer moved in with me at the B & R Trailer Court # 57 in Rock Springs, Wyoming and stayed there for approximately a month and a half to two months at which time he left the state of Wyoming without informing myself or anyone in my family where he was going and to the best of my knowledge has not returned to the state of Wyoming since that time.

4. That at the time my brother left the state of Wyoming, his last known address was B & R Trailer Court, # 57, Rock Springs, Wyoming 82901.

The accident report reveals an address of "B & R Trailer Ct., Rock Springs, WY 82901" with a listed telephone number. The record also reveals within the affidavit of Rolich that "sometime prior to January 18, 1986," he was informed that Dyer had left his last known address in Rock Springs, Wyoming to never be seen or heard from again. He reported that Dyer left, among other reasons, in order to avoid possible criminal prosecution (apparently involving the facts of the fatal accident). The record reveals a 1986 driver's license address found in Vernonia, Oregon.

The factual progression is clear and uncontradicted. On the night of the accident, Dyer moved in with his sister at the B & R Trailer Court in Rock Springs, Wyoming, stayed with her for a couple of months, was contacted by the insurance adjuster twice for statements but refused to cooperate, moved out of his sister's trailer, left the state and was once in Vernonia, Oregon, but has not been physically located by anyone since he left Wyoming sometime after November 6, 1985 and prior to January 18, 1986.

What we do not know from the record is *when* appellants obtained a copy of the State Farm file demonstrating inability of the insurance company to locate Dyer and, as noted, we do not have the file in the record. We certainly cannot judicially notice or recognize what may be attached to the appellate briefs which was never incorporated in the case record. *Cockreham v. Wyoming Production Credit Ass'n*, 743 P.2d 869 (Wyo.1987); *Nicholls v. Nicholls*, 721 P.2d 1103 (Wyo.1986).

I am left with doubt as to what any competent and diligent attorney could or should have additionally done to locate Dyer.[4] There is no question in this record that Dyer left Wyoming, left his sister without notice or later contact and disappeared from his last known address which was his sister's address at the trailer court. Due diligence in this case would conform to the standard of effort approved in *Sommers v. Gaston*, 295 A.2d 578 (Del.Super.1972) where plaintiff checked all available sources but with no success. *See also Duke v. Paul*, 20 Ill.App.3d 500, 314 N.E.2d 517 (1974) and *Pelay v. Ploog*, 281 Or. 59, 573 P.2d 1229, 1231 n. 2 (1978).

There is a distinction between the technical act of service in this case, personal service on the Secretary of State, and the subsequent notice to be given to the defendant of such service. "In the first instance, the service is clothed with certain formalities which are not required in the second instance." *Allen v. Campbell*, 141 So. 827, 829 (La.App.1932). The first is jurisdictional and the second is to provide an opportunity to defend. *Powell v. Knight*, 74 F.Supp. 191 (E.D.Va.1947).

The "departed for parts unknown" rule is stated in *Hartley v. Vitiello*, 113 Conn. 74, 154 A. 255, 258 (1931):

The requirement that the copy be mailed to the defendant at his "last-known ad-

---

4. I am also left with the question about waiver *at some point* in the technical aspects of service of process by entry of appearance and pretrial pleading activities as a participant in the litigation. *Cf. Midway Oil Corp. v. Guess*, 714 P.2d 339 (Wyo.1986) and *Vanover v. Vanover*, 77 Wyo. 55, 307 P.2d 117 (1957). Waiver of improper service or by entry of an appearance and general participation is a subject which was not addressed in briefing in district court or for this appeal.

dress" does not mean the last address known to the plaintiff, but does mean the last address of the defendant so far as it is known, that is, by those who under the ordinary circumstances of life would know it. Unless the defendant has departed for parts unknown, it means his actual address; if he has disappeared, it means his last address so far as it is reasonably possible to ascertain it.

The duty of the defendant was considered in *Swift v. Leasure*, 285 A.2d 428 (Del.Super.1971) when jurisdiction was obtained within proof of actual notice of service on the Secretary of State. The notice requirement was then reasonableness and a duty for the defendant was perceived to "keep his address current." *Id.* at 430. The court then said:

> The defendant was involved in an accident which obviously was of a relatively serious nature and he certainly must have been aware of possible future litigation. Having once submitted an address to the public authorities wherein legal process could be served upon him, he was under a continuing duty to keep this address current for a reasonable period of time. He apparently did not do this as it would appear that well within the statute of limitations period he moved without leaving with the Post Office authorities any forwarding address. The burden of furnishing the Post Office with a forwarding address was negligible compared with the difficulties imposed upon the plaintiffs to establish defendant's whereabouts by means of an independent and, perhaps, expensive search. Under these circumstances the Court will not impose upon plaintiffs the obligation to ferret out the actual location of defendant. Certification that delivery was attempted at the address furnished by the defendant at the time of the accident will satisfy the jurisdictional prerequisites. In this view support may be found in a number of cases in other jurisdictions. *Kraft v. Bahr*, 256 Iowa 822, 128 N.W.2d 261 (1964); *Skinner v. Mueller*, 1 Wis.2d 328, 84 N.W.2d 71 (1957); *Sorenson v.*

> *Stowers, supra* [251 Wis. 398, 29 N.W.2d 512 (1947)].

*Id.*

I particularly disagree with the majority about the significance or lack thereof of notice to the insurance carrier. Who better than the insurer could be called to locate the missing driver? State Farm, in this case, had the resources and the incentive. An attorney representing the decedent's family cannot fairly compete in effort. Additionally, the economic interest in this case is that of the insurance company and not the long gone, footloose driver of the involved vehicle.

We are provided a case of similar authority and example in *Duke*, 314 N.E.2d at 521–22, except that the insurance carrier for the driver, after receiving notice, let a default be entered while it had an address for its insured:

> The record in the case at bar shows that the defendant's insurance carrier, Preferred, knew of the pendency of the suit and as of May 5, 1968, knew that the defendant was leaving the State of Illinois. Preferred also knew in late August of 1969 the new address of defendant in Hawaii. There was also correspondence between the plaintiff's attorney, Preferred, and the attorneys for the defendant as to whether proper service had been made upon the defendant. In addition, plaintiff's attorney contacted Mr. Beece, the claims manager of Preferred, in regards to locating the defendant. Preferred had a contractual obligation with the defendant to defend this suit and indeed Preferred retained attorneys on defendant's behalf. However, having all the knowledge previously cited, Preferred chose to do nothing until a default judgment was entered. * * * A defendant's insurance carrier cannot embark upon its contractual obligation to defend a suit and then do nothing until a default judgment is entered and then seek to utilize [a default vacation section of the Illinois non-resident motor statute].

A case similar in service effort involving an insurance company notice is *Saucedo v.*

*Engelbrecht,* 149 Ariz. 18, 716 P.2d 79 (1986), where, however, the carrier could not locate the driver and the record revealed efforts made *by both parties.* Trial court dismissal was reversed when the appellate court first stated, "[a] finding of due diligence is a jurisdictional prerequisite," *id.,* 716 P.2d at 80, and then found plaintiff met the test in conjunction with the carrier's unsuccessful and concurrent efforts to find the missing driver. *See also Gibson v. Salvatore,* 102 A.D.2d 861, 476 N.Y.S.2d 930, 932 (1984).

The court in *Proulx v. Goulet,* 315 F.Supp. 622, 624–25 (D.Vt.1970) first found jurisdiction by substituted service on the commissioner of motor vehicles and then recognized:

> Moreover, someone—presumably the defendant's insurer—has received sufficient notice to appear and file the motion to dismiss, a motion wherein the defendant, Rene Goulet, says that "the present whereabouts of Rene Goulet is unknown." By having notified Goulet's insurer, the plaintiffs here have given it the opportunity to defend at least to the extent of its policy coverage. * * * To that extent, at least, the "fair play" called for by *McDonald v. Mabee,* 243 U.S. 90, 91, 37 S.Ct. 343, 343, 61 L.Ed. 608 [(1917)], has been had. To that extent also the constitutional demands of notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action * * *," *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), have been met, perhaps to an even greater extent than in cases where there has been mistaken delivery of process to the wrong party.

Although concurring in the reversal of the order of dismissal, I perceive no omission in proper service to proscribe existent jurisdiction. The presence of State Farm, with an opportunity to defend as it has in two courts, is self-evident. Consideration of a judgment against the driver in excess of liability insurance coverage is, on this record, totally inconsequential for anyone. The real party in interest with more than appropriate notice is the insurance carrier who has been available and has fully participated. I would not find the disappearance of an automobile driver to defeat the purpose of required liability insurance under Wyoming law or the validating processes for jurisdiction afforded by W.S. 1–6–301. *See* 13 P. Kelly, Blashfield Automobile Law and Practice § 452.4 (3rd ed. rev. 1990).

In agreement with Justice Thomas in his dissent, I would remand the case for trial to be held.

THOMAS, Justice, dissenting.

I must dissent from the disposition of this case according to the majority opinion. In my judgment, the case should either be reversed or affirmed. A remand for the purpose of effecting a determination as to whether Colley exercised due diligence in locating Dyer strikes me as an exercise in futility that can only lead to frustration for all concerned. I would hold that Colley did pursue and show the diligence "which is reasonable under the circumstances." *Carlson v. Bos,* 740 P.2d 1269, 1277, n. 13 (Utah 1987). Consequently, I would reverse the order granting the motion to dismiss and permit the case to go forward to trial.

It is my understanding that the majority of the court would not find that the failure to allude to "# 57" in the affidavit filed in support of substitute service was a fatal defect in the proceedings. The order of the trial court was not affirmed on that narrow ground. Instead, the case is reversed and remanded for a further showing of due diligence.

I rely upon the factual discussion by Chief Justice Urbigkit, in his specially concurring opinion, in my analysis of the effort that may be attempted on remand. In light of that discussion, I cannot conceive of anything that Colley might now do or could have done before service upon the Secretary of State to locate Teddy Ray Dyer. It is obvious that Dyer has chosen to avoid any attempt to communicate with Colley either personally or officially. Like Chief Justice Urbigkit, "*I am left with*

doubt as to what any competent and diligent attorney could or should have additionally done to locate Dyer." (Conc. op. at 574.) In the language of *Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306, 317, 70 S.Ct. 652, 658, 94 L.Ed. 865 (1950), it is clear that as a matter of fact Dyer is one "whose ... whereabouts could not with due diligence be ascertained...." If that perception of fact is sound, then it should follow that any effort of Colley or her counsel, diligent or otherwise, was doomed to failure.

Without denigrating the authority cited in the majority opinion in any way, I would permit the party attempting substituted service to either demonstrate due diligence in endeavoring to locate the absent defendant or, in the alternative, to rely upon a record that demonstrates, like this one does, that the absent defendant could not be found by anyone, including his own insurance carrier. This alternative would avoid an open-ended standard with respect to what efforts should be undertaken to manifest due diligence. (Is it enough to demonstrate that there was no forwarding address, or must the plaintiff engage a private investigator in every possible place and produce a negative report?) Instead, it would permit the plaintiff to prove the facts with respect to whether the defendant could be located. Those facts are present in this record; they demonstrate that Dyer could not be found; and they fully satisfy the question as to whether it was possible to give such notice to Dyer "as to make it reasonably probable that he will receive actual notice." *Wuchter v. Pizzutti*, 276 U.S. 13, 19, 48 S.Ct. 259, 260, 72 L.Ed. 446 (1928). If it is not possible to give that notice, then there is no reason to require a demonstration of due diligence to satisfy the test of due process under the federal constitution. The law should not require any futile endeavors.

I would reverse the order granting the motion to dismiss, and remand the case for trial.