#24461-rev & rem-SLZ

**2007 SD 110**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DAIRYLAND INSURANCE
COMPANY,                                             Plaintiff and Appellee,

    v.

BRETT JARMAN,                                       Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
FALL RIVER COUNTY, SOUTH DAKOTA

* * * *

HONORABLE THOMAS L. TRIMBLE
Judge

* * * *

ROBERT B. ANDERSON of
May, Adam, Gerdes & Thompson, LLP          Attorneys for plaintiff
Pierre, South Dakota                                        and appellee.

PATRICK M. GINSBACH of
Farrell, Farrell & Ginsbach, PC                   Attorneys for defendant
Hot Springs, South Dakota                            and appellant.

* * * *

ARGUED ON AUGUST 28, 2007

OPINION FILED **10/31/07**

#24461

ZINTER, Justice

[¶1.]          Dairyland Insurance Company sought enforcement of a Wyoming default judgment obtained against Brett Jarman.  The circuit court ordered enforcement over Jarman's personal jurisdiction defense.  We reverse and remand for a determination of whether Dairyland's Wyoming counsel exercised due diligence in serving Jarman under that state's non-resident automobile jurisdiction statute.

I.

[¶2.]          In 2003, Jarman, a resident of South Dakota, was driving a car in Wyoming.  Leona Farrell was a passenger.  They unexpectedly encountered black ice, the vehicle slid off the road, and Farrell was injured.  The Wyoming Highway Patrol investigated the accident, and Jarman's address was recorded in the accident report.  That address was: P.O. Box 113, Hot Springs, SD 57747.

[¶3.]          Farrell's insurance company, Dairyland, paid her uninsured motorist benefits.  It then brought suit against Jarman in Wyoming to recover those benefits. Dairyland asserted personal jurisdiction under Wyoming's non-resident automobile jurisdiction statute.

[¶4.]          Pursuant to that statute, Dairyland's Wyoming counsel served the Wyoming Secretary of State with a summons, complaint and jury demand.  He also mailed a copy of those documents to Jarman by certified mail.  Instead of sending the documents to Jarman's P.O. Box address in Hot Springs listed on the accident report, however, Dairyland sent the documents to the following address:  502 8th

#24461

Street, Edgemont, SD 57735.  The documents were subsequently returned to Dairyland marked, "Refused."

[¶5.]     Jarman did not answer or appear in the Wyoming action, and Dairyland obtained a default judgment.  Dairyland's Wyoming counsel then filed the judgment with the Fall River County Clerk of Courts and sought to have it enforced.  Jarman responded with an order to show cause[1] "why the Filing of Foreign Judgment and Request for Writ of Execution should not be dismissed[.]"  Jarman contended that although the envelope was marked "Refused," he was out-of-state at the time and never received the documents.  Both parties filed affidavits relating their factual positions.  After a hearing, but without trial, the circuit court denied the motion to dismiss and granted enforcement of the judgment.  Notwithstanding Jarman's factual assertions, the circuit court concluded, "[t]o accept Jarman's argument in this case that Wyoming jurisdiction could be defeated by refusal of the certified mail from Dairyland does not constitute a proper application of the law under the circumstances which exist."

[¶6.]     Jarman appeals contending that the judgment is not subject to enforcement because the Wyoming court never obtained personal jurisdiction under the non-resident automobile statute.  There is no dispute that if the rendering state did not have personal jurisdiction, South Dakota can not recognize the judgment.  *See* Baldwin v. Heinold Commodities, Inc., 363 NW2d 191 (SD 1985).  This

---

1.     We treat this pleading as a motion.

#24461

jurisdictional issue is a question of law that we review de novo. Grajczyk v. Tasca, 2006 SD 55 ¶8, 717 NW2d 624, 627.

## II.

[¶7.]     Wyoming's procedure to obtain service of process over a non-resident motorist is found in Wyo. Stat. 1-6-301(a). This statute provides, in relevant part:

> The . . . operation of a motor vehicle on any street or highway within Wyoming by any person upon whom service of process cannot be made within Wyoming either personally or by service upon a duly appointed resident agent is deemed an appointment of the secretary of state of Wyoming as the operator's lawful attorney upon whom may be served all legal processes in any proceeding against him . . . due to damage or injury to person or property resulting from the operation of a motor vehicle on the streets or highways within this state. Such operation constitutes the operator's agreement that any process served in any action against him or his personal representative has the same legal force and validity as if served upon him or his personal representative personally within this state. Service shall be made by serving a copy of the process upon the secretary of state or by filing such copy in his office[.] Within ten (10) days after the date of service, notice of such service and a copy of the process shall be served upon the defendant . . . either personally or by certified mail addressed to the last known address of the defendant[.][2]

---

2.     The Wyoming statute is similar to South Dakota's non-resident motorist statutes: SDCL 15-7-6 and SDCL 15-7-7. SDCL 15-7-6 provides in part:

> The use and operation by a resident of this state or the resident's agent, or by a nonresident or the nonresident's agent of a motor vehicle within the State of South Dakota, shall be deemed an irrevocable appointment by the resident or the resident's agent. . . of the secretary of State of South Dakota to be his or her true and lawful attorney upon whom may be served all legal process in any action or proceeding against the resident or nonresident. . . .

SDCL 15-7-7 provides in part:

> Service of process as authorized by §15-7-6 shall be made by serving a copy thereof upon the secretary of state, or by filing the copy in the

(continued . . .)

-3-

Wyo. Stat. § 1-6-301(a) (1977).

[¶8.]     In addition to the procedural requirements of this statute, Wyoming requires a showing of due diligence in serving the notice of service on the defendant. *Colley v. Dyer*, 821 P2d 565, 568 (Wyo 1991) (interpreting the statute "to implicitly require the plaintiff to exercise due diligence in attempting to locate an absent defendant").  The due diligence showing is more than perfunctory:

> The diligence to be pursued and shown . . . is that which is reasonable under the circumstances and not all possible diligence which may be conceived.  Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address . . . of the person on whom service is sought. . . .  Due diligence must be tailored to fit the circumstances of each case.  It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so.[3]

_____

(. . . continued)

> office of the secretary of state, together with payment of a fee of ten dollars. The service shall be sufficient service upon the absent resident or the nonresident or the resident's or nonresident's personal representative if the notice of the service and a copy of the process are within ten days thereafter sent by mail by the plaintiff to the defendant at the defendant's last-known address and that the plaintiff's affidavit of compliance with the provisions of this section is attached to the summons.

3.     We require a similar showing to establish due diligence in constructive service cases:

> before service by publication . . . may be ordered, the party instituting the litigation must exhaust all reasonable means available in an effort to locate interested parties to the litigation[.]  Ultimately, '[t]he test of the sufficiency of the *showing* of due diligence is not whether all possible or conceivable means of discovery are used, but rather it must be *shown* that all reasonable means have been exhausted in an effort to locate interested parties.'  Therefore:

(continued . . .)

*Id.* at 568 (quoting Carlson v. Bos, 740 P2d 1269, 1277 n13 (Utah 1987)).

[¶9.] In *Colley*, the plaintiff attempted to serve the defendant in person at a former address. When personal service failed, the plaintiff hired an investigator who contacted the defendant's sister. That query rendered no information. Plaintiff then utilized constructive service under the non-resident motorist statute. Notice was mailed to the previously used address, but the address did not include the defendant's complete address. Based on those facts, the Wyoming Supreme Court reversed and remanded for an adequate showing of due diligence. *Id.* at 569.

[¶10.] Dairyland argues that it utilized due diligence because it mailed the documents to Jarman's "last known address." Under *Colley*, however, Wyoming counsel's evidentiary showing of due diligence was inadequate. Additionally, Jarman's opposing affidavit raises disputed issues of material fact that should not have been resolved by motion to dismiss.

[¶11.] With respect to the evidentiary showing, there is no dispute that Dairyland never sent the documents to the address listed on the accident report,

_____

(. . . continued)

> A diligent search is measured not by the quantity of the search but the quality of the search. In determining whether a search is diligent, we look at the attempts made to locate the missing person or entity to see if attempts are made through channels expected to render the missing identity. While a reasonable search does not require the use of all possible or conceivable means of discovery, it is an inquiry that a reasonable person would make, and it must extend to places where information is likely to be obtained and to persons who, in the ordinary course of events, would be likely to have information of the person or entity sought.

> (continued . . .)

and according to Jarman's affidavit, the address on his driver's license. Dairyland sent the documents to the 502 8th Street address in Edgemont. According to Jarman's affidavit, however, there was no street delivery of mail in Edgemont. Rather, all mail was received through the post office. Additionally, the documents were sent to Edgemont instead of Hot Springs.

[¶12.]     Dairyland responds that it obtained this address through "investigat[ion]." Nothing in Wyoming counsel's affidavit, however, indicated how he determined that 502 8th Street, Edgemont was Jarman's last known address or what investigatory steps he took to determine that address. Thus, there are no underlying evidentiary facts from which the circuit court could determine that the documents were mailed to Jarman's last known street address or that 502 8th Street, Edgemont was ever Jarman's address.

[¶13.]     This Court has previously addressed a similar situation. In *Lekanidis v. Bendetti*, 2000 SD 86, 613 NW2d 542, plaintiff's attorney believed that an accident report prepared by an officer misspelled the defendant's city's name. The report further contained no zip code for the city. Consequently, counsel looked up the proper spelling of the city and found the zip code to include on the mailing. The initial notice and the notice of the hearing on the motion for default judgment were both sent to the amended address and both were returned marked, "Attempted-Not

_____

(. . . continued)
> *In re* D.F., 2007 SD 14, ¶9, 727 NW2d 481, 484 (emphasis added) (internal citations omitted).

Known."[4]  This Court concluded that the plaintiff had failed to comply with the non-resident motorist statute by failing to make the necessary due diligence showing to utilize substitute service of process.  *Id.* at ¶32, 613 NW2d at 549-50.  This Court stated:

> Clearly Lekanidis had knowledge that this address was not Bendetti's correct address. It certainly did not take Lekanidis long to find the correct address once the default judgment was entered. With only minor effort and diligence, Lekanidis could have discovered the correct address of Bendetti. He could have utilized the "skip trace" or the name of Bendetti's insurance company and policy number listed on the accident report to locate his current address long before seeking a default judgment. Based upon this lack of diligence, Lekanidis has *failed to show* that he strictly complied with the requirement under SDCL 15-7-7 by mailing all legal documents to defendant's "last known address."

*Id.* at ¶32, 613 NW2d at 548-49 (emphasis added).  *See also* Ryken v. State, 305 NW2d 393, 395 (SD 1981) (providing, "it must be *shown* that all reasonable means have been exhausted in an effort to locate interested parties.") (emphasis added).

[¶14.]	In this case, Wyoming counsel's affidavit, although stating that he exercised due diligence, is conclusionary without any evidentiary detail.  The affidavit describes none of the investigatory steps Wyoming counsel took to ascertain that Jarman's last known address was the address he utilized.

[¶15.]	Dairyland, however, argues because its letter was marked "Refused," as opposed to "Undeliverable" or "Unclaimed," the service was effective.  In its brief,

---

4.	After judgment was entered, counsel performed a "skip-trace" and determined the defendant's location.  "Skiptracing" is a "[s]ervice which assists creditors in locating delinquent debtors or persons who have fled to avoid prosecution."  Black's Law Dictionary 1387 (6th ed 1990).

Dairyland contends, "[t]he Postal Service marked the box 'Refused' for a reason." Dairyland suggests this means that Jarman must have intentionally refused the mail and therefore the service should be deemed effective. The circuit court agreed, concluding that Jarman could not evade service by refusing to accept the attempted service.

[¶16.] According to Jarman's responsive affidavit, however, he was in Chicago when delivery of Dairyland's certified mail would have been attempted at the Edgemont street address. Moreover, Jarman's affidavit specifically stated that he never received the documents. This created a material issue of disputed fact because Dairyland's affidavit contains no evidence concerning post office procedure or protocol for marking a letter "Rejected." There was also no evidence from a postal worker that the "Refused" box was checked in this case because Jarman actually refused to accept delivery of the letter.[5]

---

5. Dairyland relies on *Miserandino v. Resort Properties, Inc.*, 345 Md 43, 59, 691 A2d 208, 215-16 (Md 1997) for the proposition that a letter marked "refused" is an affirmative refusal by the defendant, and a letter that is not affirmatively refused is marked "unclaimed." The *Miserandino* discussion of "refused" verses "unclaimed" is, however, dicta because the court's holding was that service by first class mail was improper. The *Miserandino* Court also noted, "[i]n the case before us, *there is no indication* that any earlier attempt of service had been made, or *that the defendants were attempting to avoid or resist service*." *Id*. at 56, 691 A2d at 214 (emphasis added).

Dairyland also relies on *Tate v. Hughes*, 255 Ga App 511, 565 SE2d 853 (GaApp 2002). In that case, the nonresident defendant did not claim the certified mail at her local post office even though postal authorities had notified her of the mail. Further, unlike Jarman, the defendant in *Tate* did not deny having received the notices from postal authorities that the certified mail had been available for pickup.

[¶17.] In light of the foregoing disputes of fact, the circuit court erred in granting enforcement on the ground that Jarman refused delivery of the letter. Although the use of affidavits is often permissible in deciding motions, "[w]here the affidavits are so conflicting as to render cross-examination essential, then the desirability of expeditious procedure must give way to a more formal hearing." Matter of Estate of Eberle, 505 NW2d 767, 771 (SD 1993) (citations omitted). In such cases, "[a]ffidavits, although made under oath, are ordinarily not considered competent evidence. . . . [They] are unsatisfactory as forms of evidence; they are not subject to cross-examination, combine facts and conclusions and, unintentionally or sometimes even intentionally, omit important facts or give a distorted picture of them." *Id.*

[¶18.] In this case, the circuit court erred in deciding this matter on affidavits. Wyoming counsel's affidavit was conclusionary with respect to due diligence and the conflicting assertions in Jarman's affidavit raise material disputes of fact about the due diligence exercised by Wyoming counsel. Because the circuit court incorrectly relied upon affidavits to determine due diligence, including whether Jarman had effectively refused service, we reverse and remand for a due diligence hearing. Because we have remanded, we do not reach the parties' remaining arguments.

[¶19.] GILBERTSON, Chief Justice, SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.